Nelson Armando PAZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–00–00548–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 15, 2001.

Thomas R. Steinmeyer, Houston, for appellants.

Alan Curry, Houston, for appellees.

Panel consists of Justices ANDERSON, FOWLER, and EDELMAN.

## OPINION

FOWLER, Justice.

The State of Texas charged Nelson Armando Paz (appellant) with capital murder for intentionally or knowingly murdering a child under the age of six years old. A jury found appellant guilty of capital murder as charged in the indictment and assessed punishment at life in the Institutional Division of the Texas Department of Criminal Justice. Appellant complains on appeal that the trial court committed reversible error in failing to charge the jury on the lesser included offenses of criminally negligence homicide and injury to a child. We affirm.

## FACTUAL BACKGROUND

On February 7, 1999, Ruth Muniz left her home to go to her mother's house. Her youngest daughter, V.C. (the complainant in this case) was tired and cranky when her mother was leaving, so Ms. Muniz decided to leave 18 month old V.C. in the care of appellant, who was her live-in boyfriend. Other than remarking that V.C. was cranky and tired, Ms. Muniz characterized V.C.'s health and behavior that day as normal. After arriving at her mother's house, Ms. Muniz called appellant to check on V.C., concerned that she might still be cranky and crying. Appellant told her that V.C. was in bed and sleeping, and had been since she left. Approximately 15 minutes later, appellant called Ms. Muniz and frantically told her that V.C. was not

breathing and her body was limp. Ms. Muniz immediately rushed home in the car.

As she arrived at home, a fire truck was coming on to the scene. V.C. was found on the floor of the living room, unconscious, not breathing, and without a pulse. Appellant claimed that he did not know what happened. However, after Ms. Muniz brought a plastic bag out of the bedroom, that had been lying on the bed where appellant said V.C. was sleeping, he offered an explanation that perhaps she suffocated in the bag. As she was being transported to Ben Taub Hospital, the paramedics were able to get V.C.'s pulse back. Dr. Poehling, the treating physician in the emergency room, was of the opinion that, because paramedics were able to revive V.C., V.C.'s heart had stopped only a short time before the paramedics had arrived. Within 30 minutes of her arrival at the hospital, V.C. was pronounced dead.

A post-death examination and the autopsy revealed that V.C. died as a result of a blunt-force head injury, and not from suffocation. These examinations revealed recent signs of sexual abuse, a history of sexual abuse, fingerprint size bruises on V.C.'s chest and back, bruises to the left and right of V.C.'s chin, massive hemorrhaging in the brain, and a large fracture on the skull.

## DISCUSSION AND HOLDINGS

In his sole point of error, appellant contends that the trial court erred in failing to charge the jury on the lesser included offenses of criminally negligent homicide and injury to a child.

■ In order for a trial court to determine whether it should charge a jury on a lesser offense than the one for which the defendant is indicted, the trial court employs a two-prong test: (1) the lesser included offense must be included within the proof necessary to establish the offense charged; and (2) some evidence must exist that would allow a jury to rationally find that if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.App. 1993). In making this determination, we must review all the evidence admitted at trial. *Enriquez v. State*, 21 S.W.3d 277, 278 (Tex.Crim.App.2000). If more than a scintilla of the evidence from any source raises the issue that the defendant is guilty only of the lesser included offense, the instruction must be submitted. *Forest v. State*, 989 S.W.2d 365, 367 (Tex.Crim.App. 1999). Credibility of the evidence and whether it conflicts with other evidence is not to be considered when determining whether the jury should have been charged with a lesser included offense. *Banda v. State*, 890 S.W.2d 42, 60 (Tex. Crim.App.1994).

■ The court of criminal appeals has explained that the rationale behind the second prong of the test, "preserves the integrity of the jury as the factfinder by ensuring that the jury is instructed as to a lesser included offense only when that offense constitutes a valid, rational alternative to the charged offense." *Arevalo v. State*, 943 S.W.2d 887, 889 (Tex.Crim.App. 1997). The instruction must not constitute an invitation to the jury to reach an irrational verdict, and the jury must be limited to those crimes which a reasonable view of the evidence would sustain. *Id.* at 889–90.

### I. Criminally Negligent Homicide

■ Appellant did not request that the jury be charged on criminally negligent homicide at trial. As a result, appellant did not preserve error for our review on criminally negligent homicide, and we will not consider appellant's point of error with respect to that issue. *Kinnamon v. State*,

791 S.W.2d 84, 96 (Tex.Crim.App.1990), *overruled on other grounds by Cook v. State*, 884 S.W.2d 485, 491 (Tex.Crim.App. 1994); *Thomas v. State*, 701 S.W.2d 653, 656 (Tex.Crim.App.1985); *Hernandez v. State*, 10 S.W.3d 812, 821 (Tex.App.—Beaumont 2000, pet. filed); *see Posey v. State*, 966 S.W.2d 57, 62 (Tex.Crim.App. 1998) (holding that a trial court does not commit error by failing to *sua sponte* instruct the jury on a defensive issue).

## II. Injury to a Child

Appellant was charged with capital murder for intentionally or knowingly causing the death of an individual under six years of age. A person commits the offense of injury to a child if he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, causes serious bodily injury to a child. TEX.PEN.CODE ANN. § 22.04(a)(1) (Vernon Supp.2000). Serious bodily injury is defined in the penal code as, "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX.PEN.CODE ANN. § 1 .07(46) (Vernon 1994).

■ The first prong of the test is satisfied. Injury to a child is a lesser included offense of capital murder. TEX.CODE CRIM. PROC. ANN. art. 37.09 (Vernon 1981); *Otting v. State*, 8 S.W.3d 681, 690 (Tex.App.—Austin 1999, pet. ref'd, untimely filed); *see Chase v. State*, 968 S.W.2d 943, 945–46 (Tex.App.—Eastland 1998, pet. ref'd); *see also In re L.M.*, 993 S.W.2d 276, 282–83 (Tex.App.—Austin 1999, pet. denied). However, we must also determine whether some evidence existed that would allow a jury to rationally find that if appellant was

guilty, he was guilty *only* of the lesser offense.

■ In support of the second prong of the test, appellant argued at trial and on appeal that there was evidence showing that the deadly blow could have been recklessly-rather than intentionally-inflicted. He points to testimony by Dr. Moore, the pathologist, who stated that V.C., at the very least, suffered from "serious bodily injury" that led to her death and that she did not know whether the conduct causing V.C.'s death was intentional or reckless.[1] As we explain below, this testimony was insufficient to allow a jury to rationally find that if appellant were guilty, he was guilty *only* of acting recklessly.

Dr. Shook, an expert in this trial who examined Dr. Moore's autopsy report, stated that a child who had V.C.'s injuries would "lapse instantaneously" into a coma, and that this is "very clearly a lethal injury." When asked how much force it would take to cause an injury of this nature, Dr. Shook replied, "Children who are in motor vehicle crashes, high-impact motor vehicle crashes may sustain an injury this severe, but it would be unusual. Even if one is propelled out of the window going 60 miles an hour, you may not get a head injury quite this severe. This is an extremely high-impact injury . . . . it is not consistent with having fallen in an unintentional way." Dr. Shook concluded her testimony by stating that, "this [impact] would have caused an immediate coma in this child and very shortly thereafter be followed by respiratory arrest."

After a review of the evidence in this case, we find no evidence that would warrant a charge on the lesser included offense of injury to a child. *Ross v. State*, 861 S.W.2d 870, 877 (Tex.Crim.App.1992).

1. On appeal, appellant also pointed to other testimony to argue that the issue of recklessness was raised, however, this particular argument was not raised at trial and is waived.

TEX. R.APP.P. 33.1(a)(1); *Dixon v. State*, 2 S.W.3d 263, 273 (Tex.Crim.App.1998) (citing *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim.App.1995)).

There were no witnesses to the offense. Consequently, we have to rely on the testimony of expert witnesses to inform us of the nature of this child's injuries.[2] Dr. Moore did not testify that she knew the blow was inflicted recklessly. During the State's direct examination of Dr. Moore, the State asked, "Based on your observations of the injuries to V.C., are those consistent with an intentional act?" Dr. Moore replied, "Most likely." On cross-examination, Dr. Moore was asked, "And you indicated that you do not know whether the injury that V.C. suffered, that it possibly could be an intentional act, it also could have been a reckless act; is that correct?" Dr. Moore answered, "That's correct." This response, rather than providing some evidence that the act was reckless only, was, instead, no evidence at all; the witness clearly said she could not say which it was. *See Massey v. State*, 933 S.W.2d 141, 155 (Tex.Crim.App.1996) (holding "That a witness agrees that anything is possible and that he cannot be 100 percent certain of anything does not raise evidence for purposes of a lesser-included offense."). Dr. Shook, however, had no such problem concluding whether the blow was intentional or reckless. Although she never used the word "intentional," it is clear she thought the blow was intentional. Dr. Shook testified that this was "very clearly a lethal injury"—"an extremely high impact injury." "Children who are in

... high-impact motor vehicle crashes may sustain an injury this severe, but it would be unusual." "Even if one is propelled out of the window going 60 miles an hour, you may not get a head injury quite this severe." This injury was "not consistent with having fallen in an unintentional way."

In conclusion, the testimony appellant relies on to argue that he was entitled to a lesser included offense charge of injury to a child was no evidence at all. As such, it did not warrant a charge. Accordingly, we find that the trial court did not err in refusing to charge the jury on the lesser included offense of injury to a child. The decision of the trial court is affirmed.

**2.** In the realm of lesser included offenses, this case is unusual because we have no direct evidence to show how and under what circumstances the blow was inflicted. Typically, when a lesser included offense is requested and given, direct evidence exists that the defendant did or did not act in a certain way. *See e.g. Wesbrook v. State*, 29 S.W.3d 103 (Tex.Crim.App.2000) (defendant, charged with two counts of capital murder, requested a lesser included offense charge on aggravated assault, arguing that though he killed five persons by shooting them in the head, chest, or abdomen with a high-powered rifle at close range, he did not intend to kill them); *Johnson v. State*, 915 S.W.2d 653, 658 (Tex.App.— Houston [14th Dist.] 1996, pet. ref'd) (defendant, charged with murder, stated that he both acted in self-defense in killing the victim, and he did not mean to kill him); *Jones v. State*, 900 S.W.2d 103, 106 (Tex.App.—Houston [14th Dist.] 1995, no pet.) (defendant, charged with murder, claimed he was entitled to lesser included offense instructions because of his written statement that he accidentally shot the victim). Here we do not have that sort of evidence.