NO. 07-03-0260-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JULY 25, 2005

_____

NATHAN FELDER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 69TH DISTRICT COURT OF DALLAM COUNTY;

NO. 3539; HONORABLE RON ENNS, JUDGE
_____

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

**OPINION**

Appellant Nathan Felder brings this appeal challenging his conviction of capital murder and automatic sentence[1] of life in prison. We affirm.

N.T. was two years old at the time of his death. He lived with his mother, Brenda Thaxton, and her boyfriend, Felder. Thaxton had a job outside the home and left N.T. with appellant while she was at work. On April 22, 2001, Thaxton arrived at work at 9:00 a.m.

_____

[1]The State did not seek the death penalty.

and left work at 4:00 p.m. After arriving home, Thaxton talked briefly with N.T. and appellant and then left N.T. with appellant again while she went to the grocery store.

When Thaxton returned home, N.T. was completely limp and gasping for air. During the call to 911, appellant explained the child's injuries by saying he fell off the couch. Appellant told police officers that he had gone to the restroom for a minute and when he came back, N.T. was face down, unconscious, and on the floor between a speaker and the arm of the couch.

N.T. was transported to Coon Memorial Hospital in Dalhart and then transferred to Northwest Texas Hospital in Amarillo because of the severity of his injuries. The examining physician noted N.T. had injuries all over his head and upper torso. He had bruises along the jaw bone, in front of his ears, inside the ears, behind the ears, all over his back, lower body, legs and arms. N.T. never regained consciousness and was pronounced dead on April 23, 2001.

The State charged appellant in a two-count indictment with capital murder and injury to a child. Appellant pled not guilty to both counts. At trial, after both sides had closed their evidence and the trial court was hearing objections to the charge, the State abandoned the second count of the indictment which alleged injury to a child. Appellant's counsel then requested it be included as a lesser included offense. The court denied the request, and the jury was charged with finding appellant either not guilty or guilty of capital murder.

Appellant raises three issues on appeal.[2]  First, he contends the trial court committed reversible error in refusing to submit the charge of injury to a child to the jury as set forth in count two of the indictment when the trial court never gave the State consent to abandon or dismiss the count.  Second, appellant states his conviction is barred by the doctrine of double jeopardy because the State waived, abandoned and dismissed the second count of the indictment which charged the lesser included offense of injury to a child after the jury was impaneled and sworn.  Third, appellant argues the trial court committed reversible error in refusing to submit the lesser included offense.  We begin with appellant's third issue on appeal.

In determining whether a lesser included offense is required in the charge, the court employs a two-step test: (1) the lesser included offense must be included within the proof necessary to establish the offense charged, and (2) some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense.  *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex.Crim.App. 1993); *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim.App. 1981).

A person commits the offense of capital murder if he intentionally or knowingly murders an individual under six years of age.  TEX. PEN. CODE ANN. §§ 19.03(a)(8); 19.02(b)(1).  A person commits the offense of injury to a child if he intentionally or knowingly causes serious bodily injury to a child.  TEX. PEN. CODE ANN. § 22.04(a)(1).  Injury to a child is, therefore, a lesser included offense of capital murder, and the first prong

---

[2] The State argues appellant has not preserved for appeal the complaints raised in his three issues.  We do not reach that argument.

of the test is satisfied. *Paz v. State*, 44 S.W.3d 98, 101 (Tex.App.–Houston [14th Dist.] 2001, pet. dism'd, untimely filed). We must determine then whether some evidence existed that would allow a jury to rationally find that if appellant was guilty, he was guilty only of the lesser offense. *Id.*

To evaluate the second prong of the test, we consider whether the jury could have found appellant guilty *only* of injury to a child. *Rousseau*, 855 S.W.2d at 673. It is only when there is conflicting evidence concerning an element of the greater offense which is not an element of the lesser offense that a charge on the lesser included offense need be given to the jury. *Royster*, 622 S.W.2d at 444. The distinguishing elements between injury to a child and capital murder is the intended result. Injury to a child requires proof the defendant intentionally or knowingly caused serious bodily injury, whereas, capital murder requires proof he intentionally or knowingly caused death. TEX. PEN. CODE ANN. §§ 22.04(a)(1); 19.03(a)(8); 19.02(b)(1). If more than a scintilla of evidence from any source raises the issue that the defendant is guilty only of the lesser included offense, the instruction must be submitted. *Forest v. State*, 989 S.W.2d 365, 367 (Tex.Crim.App. 1999).

In support of his contention that the lesser included offense should have been included within the jury charge, appellant first refers us to audiotape recordings of police interviews of appellant that took place after the death of N.T. Specifically, appellant refers to State's Exhibits 31 and 32, two recordings in which he provides his version of the events of April 22, 2001 to the police. Appellant's brief represents that, in these tapes, he "repeatedly stated that he didn't believe he killed the child." If these audiotaped statements

4

provided evidence that appellant committed an offense and supported only the offense of injury to a child, the inclusion of the lesser included offense in the jury charge would have been warranted. However, having reviewed State's Exhibits 31 and 32, we do not find that appellant at any point stated he didn't believe he killed the child. Appellant's statements recorded on those exhibits contain no acknowledgment of any action on his part that might have resulted in either the injuries to N.T. or the child's death. A defendant's testimony that he committed no offense, or testimony which otherwise shows that no offense occurred at all, is not adequate to raise the issue of a lesser included offense. *Lofton v. State*, 45 S.W.3d 649, 652 (Tex.Crim.App. 2001).

Appellant next refers us to State's Exhibits 33 and 34, also audiotaped statements to the police, in which appellant, according to his brief, "tells how he slipped and fell with the child to the floor on the date of the incident and how he didn't think he injured the child then, but he wasn't for sure. He also talks about an incident the day before the child's death where the child blew out of the back door of the residence in a high wind, fell from the porch and injured himself. Finally, in State's Exhibit 34, [appellant] relates in detail falling in the kitchen with the child and the child's head hitting the floor." We presume appellant points the court to these statements as alternative causes for the fatal injuries to N.T. However, if each of these described incidents were true and were the causes of the fatal injuries to N.T., appellant would have been guilty of no offense at all.[3] As noted, "if a

---

[3] The State mentions the testimony of the only witness called by appellant at trial, David Bridgman. Bridgman, appellant's neighbor, testified that on the day before N.T. was fatally injured, Appellant brought N.T. to his house and told him that N.T. had just blown off the back porch. The testimony provides no support for Appellant's argument for the charge on the lesser included offense.

5

defendant either presents evidence that he committed no offense or presents no evidence, and there is no evidence otherwise showing that he is guilty only of a lesser- included offense, then a charge on a lesser-included offense is not required." *Bignall v. State*, 887 S.W.2d 21, 23 (Tex.Crim.App. 1994).

Without referring us to specific evidence,[4] appellant next argues the medical evidence presented at trial shows injuries which could have been inflicted with the intent only to cause serious bodily injury. Citing *Schweinle v. State*, 915 S.W.2d 17, 19 (Tex.Crim.App. 1996) and *Saunders v. State*, 840 S.W.2d 390, 391 (Tex.Crim.App. 1992), appellant contends the evidence is subject to the interpretation that the injuries to N.T. were inflicted with the intent to cause serious bodily injury rather than death. We disagree.

Medical evidence included the testimony of Dr. Rodney Tucay, the forensic pathologist who performed the autopsy on N.T. He testified that N.T. had 37 separate injuries to the outside of his body, some of which were older than others. There were several areas of hemorrhage inside N.T.'s brain. There was also an injury in N.T.'s abdominal area to the mesentery fasc. Dr. Tucay testified he would not expect to see head injuries like N.T.'s from an accidental fall from three feet and that the injuries were more consistent with a fall from two or three stories high.[5] Tucay testified it was very rare to find injuries to a child's mesentery fasc like that suffered by N.T. He said such an injury is not

---

[4] *See* Tex. R. App. P. 38.1(h) (appellant's brief must contain clear and concise argument with appropriate citations to the record).

[5] Ranger Gary Henderson, who searched the home of appellant and Thaxton, testified the majority of objects from which N.T. could have fallen were 30 inches or less in height. The couch was less than 30 inches tall and the speaker was 24 inches tall.

consistent with a fall but with being hit with a blunt object with tremendous force in the stomach. The head injuries to N.T. were recent. Tucay testified:

> I will be able to say that in most probability these injuries were not caused by accidents, because of the multiplicity of the injuries on the right side of the head, on the left side of the head, on the forehead, and on the back of the head. If a person would have fallen, you would have– you would expect injury concentrating on the point of impact and inside the brain, but if you have injuries all over the body, that– it's difficult for me to think that it would be an accident.

Dr. Tucay opined the cause of death of N.T. was blunt force injuries to the head and suggested the manner of death was homicide.

The State also presented Dr. Eric Levy, N.T.'s treating physician at Northwest Texas Hospital. At the time of his testimony, Dr. Levy was also serving on the Panhandle Child Fatality Review Team and the Texas State Child Fatality Review Team. Dr. Levy testified he had been involved in hundreds of cases in which a child sustained serious head injuries, but never a case in which a child received fatal head injuries from a fall of three feet. Dr. Levy also testified that, even from a fall of six feet or so, it would be exceedingly rare to receive fatal head injuries. Levy testified when he examined N.T. on April 22, 2001:

> He had a geometric pattern of bruises of varying ages, both on the right and the left side of his face. He had bruises throughout his scalp. He had bruises on the left side of his groin. He had multiple bruises over his arms and legs of varying ages. And I put three plus, meaning extensive bruising over the entire lower back. And he had some agonal respirations, which are terminal respirations. It's the type of respiratory pattern that we humans do before we die. And he had occasional what we call decerebrate posturing, which is that type of extension that we do, again, consistent with a severe head injury prior to death.

7

Dr. Levy testified that N.T. had been severely traumatized and that the history given medical personnel (i.e., N.T. falling between the couch and a speaker) was not consistent with N.T.'s condition because he had "severe, lethal, extensive injuries that could not have occurred in the manner that was told to the health care professionals." He further indicated that N.T. suffered from violent, focused, and repeated trauma which would have incapacitated N.T. immediately.

Dr. Guileyardo, also a forensic pathologist, was asked by the State to review the evidence in this case and to testify during trial. During trial, Guileyardo testified that the cause of N.T.'s death was blunt force injuries. He stated the injuries sustained by N.T. would be consistent with a large man hitting a 25 pound child with his hand or fist, slamming the child's head against a blunt object or surface, and striking the child on the head with a blunt object. Guileyardo indicated the injuries would not be consistent with an accidental fall in the home because of the multiple impact sites in several areas which were all severe. He indicated the injuries to the intestines would not be seen in any type of fall or bumping into an object but are, instead, the result of a deep squeezing of the tissues against the spine. Guileyardo further testified that with a blow that is going to cause death, the child is going to look abnormal within a very few minutes.

There must be affirmative evidence in the record raising the lesser offense before an instruction is warranted. *Bignall*, 887 S.W.2d at 24. It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. *Skinner v. State*, 956 S.W.2d 532, 543 (Tex.Crim.App. 1997), *cert. denied*, 523 U.S. 1079 (1998). We cannot agree with appellant that the medical evidence in this case is subject to an interpretation like that in

8

*Saunders* or that based on the defendant's testimony in *Schweinle*. *Schweinle*, 915 S.W.2d at 20; *Saunders*, 840 S.W.2d at 392. We see nothing in the evidence relied upon by appellant that affirmatively suggests the horrific injuries to N.T. were inflicted with an intent only to cause serious bodily injury rather than death. Like the court in *Paz*, we find no evidence that would warrant a charge on the lesser included offense of injury to a child.[6] *Paz*, 44 S.W.3d at 101. Accordingly, we find the trial court did not err in refusing to so charge the jury, *Lofton*, 45 S.W.3d at 652*; Bignall,* 887 S.W.2d at 23, and overrule appellant's third issue.

In his first issue on appeal, appellant contends the trial court committed reversible error in refusing to submit the charge of injury to a child to the jury as set forth in count two of the indictment even though the trial court never gave the State consent to abandon or dismiss the count. In support of his proposition, appellant refers this court to several cases. *See Ex Parte Preston*, 833 S.W.2d 515, 517 (Tex.Crim.App. 1992); *Woods v. State*, 211 S.W.2d 210, 211 (Tex.Crim.App. 1948); *Jackson v. State*, 50 S.W.3d 579, 596 (Tex.App.–Fort Worth 2001, pet. ref'd); *Brown v. State*, 900 S.W.2d 805, 807-08 (Tex.App.–San Antonio 1995, pet. ref'd); *Foster v. State*, 661 S.W.2d 205, 209 (Tex.App.–Houston [1st Dist.] 1983, pet. ref'd). However, we agree with the State that the cases cited by appellant, with the exception of *Woods*,[7] consider the abandonment of a

---

[6] Expert testimony in *Paz* indicated the child there suffered an extremely high impact injury that was not consistent with having fallen in an unintentional way, and that the child would have immediately fallen into a coma followed by respiratory arrest. *Paz*, 44 S.W.3d at 101.

[7] *Woods* lays the predicate for the modern day interpretation that the State may, with the consent of the court, dismiss, waive or abandon a portion of the indictment. *Preston*,

portion of an indictment in the context of double jeopardy. Here, double jeopardy is inapplicable because the State is not now attempting to prosecute appellant for the offense of injury to a child. Thus, appellant's claim is not ripe for review.[8] *Burks v. State*, 876 S.W.2d 877, 889 (Tex.Crim.App. 1994), *cert. denied*, 513 U.S. 1114 (1995); *Keith v. State*, 782 S.W.2d 861, 864 (Tex.Crim.App. 1989). We therefore overrule appellant's first issue.

Our disposition of appellant's third and first issues disposes of his second issue as well, and it is overruled. We therefore affirm the judgment of the trial court.


James T. Campbell
Justice


Do not publish.

---

833 S.W.2d at 517. However, if the dismissal, waiver or abandonment occurs after jeopardy attaches, the State is barred from later litigating those allegations. *Id*.

[8] We note also that the court in *Jackson* rejected a theory similar to that asserted in appellant's first issue. 50 S.W.3d at 597.