COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| ABEL RIOS, | | No. 08-06-00211-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 210th District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20040D00922) |
| | § | |

## O P I N I O N

This appeal arises from the tragic death of four-year-old Tangie Vargas. Abel Rios appeals his conviction of injury to a child. Appellant was charged by indictment with one count of capital murder and one count of murder in the death of Tangie Vargas, a child under six years of age. A jury found him guilty of the lesser-included offense of injury to a child and assessed punishment at life imprisonment. The judgment includes an affirmative deadly weapon finding. For the reasons that follow, we affirm.

### FACTUAL SUMMARY

Janice Garcia Rodriguez met Appellant in El Paso in March of 2003 and they began living together a month later. Rodriguez had three daughters, four-year-old Tangie, seven-year-old Valerie, and one-year-old Jayceen. Tangie required constant care because she was born with Cornelia de Lange Syndrome, also known as Brackman Syndrome In addition to certain physical features, Cornelia de Lange is characterized by mental retardation and developmental delay as well as and difficulty in feeding and communicating. Rodriguez had learned to understand Tangie's non-verbal sounds and gestures. Tangie was also prone to respiratory infections and required treatment with a

nebulizer and albuterol. She had been hospitalized on multiple occasions. Despite her challenges, Tangie was a happy child.

On December 27, 2003, Valerie was staying with her aunt and needed clothes. Rodriguez left Tangie with Appellant while she dropped off the clothes and stopped by her mother's house, but she was gone less than half an hour. Tangie was fine when Rodriguez left. When she returned, she found Appellant kneeling on the floor with Tangie and holding the nebulizer to her face. Appellant told her that Tangie was not breathing. Tangie was limp, her eyes were not blinking, and she was vomiting through her mouth and nose. Rodriguez had seen Tangie when ill and not breathing but she had never seen her like this. Rodriguez told Appellant to call 911, but he refused and told her to drive Tangie to the hospital herself so that she would not waste time waiting for the ambulance. Rodriguez insisted and she spoke with the 911 operator. Appellant wanted to leave the apartment because he had outstanding warrants but Rodriguez asked him to stay.

Police units and EMS arrived at the scene. Paramedics Abel Duque and Alex Miranda found Tangie lying on the floor, not breathing, with her pupils fixed and dilated. Duque was unsuccessful in establishing an adequate airway but Tangie was sufficiently stabilized for transport to the hospital. Duque asked what had happened to Tangie but Rodriguez was hysterical and Appellant remained in a bedroom. If Duque had known that Tangie had suffered blunt trauma, he would have taken her to Thomason Hospital because it is a level-one trauma center. Instead, they transported her to Del Sol Medical Center.

Rodriguez did not remember the details of what happened after the ambulance arrived, but she recalled riding with Tangie in the ambulance. Appellant remained at home with Jayceen. At the hospital, the medical staff asked Rodriguez what had happened to Tangie. Because she did not know, she called Appellant and begged him to come to the hospital and explain what had happened.

When Appellant eventually arrived at Del Sol, he spoke with Officer Jose Martinez of the El Paso Police Department. Appellant said that he had left Tangie in her bedroom while he was doing the laundry. When he returned, she was on the floor and having difficulty breathing. Appellant picked her up and took her into another room where there was a machine which helped her breathe. She began throwing up and he tapped her on the back and attempted to clear her mouth. At that point, the child's mother returned and they called 911.

Detective Oscar Morales was dispatched to Del Sol because a four-year-old child had sustained a brain hemorrhage by unknown means. He approached Appellant in the emergency room and asked whether Appellant would speak to him at the police substation. Appellant agreed and followed Detective Morales to the substation. Appellant waived his constitutional rights and gave a voluntary written statement. He said that he found Tangie on the bedroom floor gasping for air. He took her into the living room because that is where the "vapor machine" was located but she started vomiting. He tapped her back gently and used his finger to try to remove food from her mouth but she continued to vomit and gasp for air. When Rodriguez came home, he called 911.

The CT scan revealed that Tangie had suffered brain hematomas. Her pupils were fixed and unresponsive and she was placed on a ventilator. Her pediatrician decided to immediately transfer her to the pediatric intensive care unit at Las Palmas Medical Center. Steroids were administered to reduce brain swelling and Tangie remained on the ventilator while the doctors waited to see how much damage she had sustained. A brain flow scan performed at Las Palmas revealed a lack of blood flow in the brain. An EEG showed a flattening of the waves indicating a lack of electrical activity in the brain. Three neurologists examined Tangie and performed clinical tests which indicated the absence of reflexes. These test results indicated that no brain function remained and Tangie could not survive without artificial life support. On December 30, the doctors informed

Rodriguez that Tangie was brain dead and she decided to disconnect life support. Tangie died some two hours later.

Dr. Corinne Stern, the chief medical examiner of El Paso County, performed the autopsy. When Dr. Stern reflected the scalp, she found two separate areas of subgaleal hemorrhage indicating two separate impact sites. These injuries are indicative of blunt force injury caused by something striking the child's head or having her head struck against an object. Dr. Stern removed the cranial vault and found a subdural injury. Tangie had bleeding underneath the dura covering the left occipital lobe. Further examination showed diffuse subarachnoid hemorrhage covering the convexities of the brain. Subarachnoid hemorrhage occurs when the small vessels that connect the pia mater to the brain are torn when the brain moves around in the vault. Dr. Stern examined the brain further and found a contusion or bruise of the parynchemal. She characterized it as a contrecoup injury from one of the two impact sites identified on the subgaleal tissue. Dr. Stern concluded that the cause of death was abusive head injuries caused by striking her head with an object or striking her head against an object. She added that the abusive head injuries occurred with shaking. She based the latter conclusion on her examination of the eyes. She found bleeding in both optic nerve sheaths which is caused exclusively by a shaking-type motion of the head. Through additional testing, Dr. Stern found retinal hemorrhage on the left side.

In Dr. Stern's expert opinion, a hand can be a deadly weapon. A hand can generate enough force to cause subdural hemorrhage and contusions in the brain from direct impact of the hand or by knocking the individual down and causing a contrecoup injury. A hand can cause subarachnoid hemorrhage by generating significant motion of the brain inside of the skull to tear the bridging veins. In her opinion, these injuries were inflicted upon Tangie Vargas with considerable force and violence and she could not have survived because her injuries were so severe. Dr. Stern concluded

that the combination of injuries constituted "shaken impact syndrome."

Following the autopsy, a warrant was issued for Appellant's arrest. On December 31, 2003, Detective Morales went to the residence to execute the arrest warrant. Appellant opened the door and allowed the detective inside. When Detective Morales noticed the beer and chair set-up, Appellant explained that he was having a New Year's Eve party. Detective Morales placed Appellant under arrest and transported him to the police substation. Detective David Samaniego interviewed Appellant and obtained another written statement after Appellant waived his constitutional rights. Detective Samaniego advised Appellant that his prior written statement claiming that Tangie fell off of the bed was inconsistent with the results of the autopsy. Appellant then said that Tangie fell or jumped out of his arms and her head might have hit the wooden bed rail. When Detective Samaniego confronted Appellant with the autopsy finding that there was more than one impact injury to the brain, he admitted that he had struck her with his hand. In his written statement, he said that he "went blank" after she hit her head on the bed rail and began crying and screaming. He did not know what came over him but he remembered hitting her hard on the head with his hand. He thought he struck her with an open hand but could not remember. After he hit Tangie, she began to have trouble breathing and he took her into the living room. He tried giving her a steroid treatment to help her breathe but she began vomiting He admitted lying to the police officers because he was scared.

A month or so after Tangie's death, Appellant wrote Rodriguez a letter in which he admitted that he had not told her the truth about Tangie. He was carrying Tangie and she fell out of his arms and hit her head on the bed and the floor. Appellant picked her up and noticed that she looked "weird." Appellant reacted by striking her head with his hand and telling her to wake up.

A grand jury returned a two-count indictment against Appellant. Count I alleged that

Appellant committed capital murder by intentionally and knowingly causing the victim's death by striking her dead with his hand. Count II alleged that Appellant committed murder by intentionally and knowingly committing an act clearly dangerous to human life, to-wit: striking the victim's head with his hand. The indictment included an allegation that Appellant used or exhibited a deadly weapon, namely, his hand.

The trial court granted Appellant's motion for an instructed verdict with respect to Count II, but the court charged the jury on the lesser-included offenses of murder and injury to a child in connection with Count I. The jury found Appellant guilty of injury to a child and answered the deadly weapon special issue in the affirmative. The jury assessed punishment at life imprisonment.

## LESSER-INCLUDED OFFENSE

In Issues One and Two, Appellant complains that the trial court erred by submitting injury to a child to the jury because it is not a lesser-included offense of capital murder and the evidence does not support its submission. He additionally argues that he was deprived of notice in violation of the Due Process Clause.

Appellant requested that the trial court submit, as lesser-included offenses, injury to a child (intentionally or knowingly causing bodily injury), a second degree felony, and injury to a child (recklessly causing bodily injury), a state jail felony. The trial court instructed the jury on injury to a child by recklessly causing serious bodily injury and by recklessly causing bodily injury, and indicated that it would also instruct the jury on injury to a child by intentionally or knowingly causing serious bodily injury, a first degree felony. Appellant did not object to the inclusion of the latter instruction in the charge. Consequently, he waived any error in the improper submission of this lesser-included offense. *Delgado v. State*, 235 S.W.3d 244, 250 (Tex.Crim.App. 2007), *citing* 43 GEORGE E. DIX & ROBERT O. DAWSON, Criminal Practice and Procedure § 36.50 at 202.

Even if Appellant had preserved the complaints raised in Issues One and Two, they are without merit. Article 37.09 of the Code of Criminal Procedure provides that an offense is a lesser-included offense if it is established by proof of the same or less than all the facts required to establish the commission of the offense charged. TEX.CODE CRIM.PROC.ANN. art. 37.09(1)(Vernon 2006). Article 37.09 satisfies due process and notice requirements because a lesser-included offense is necessarily included within the greater offense. *Jacob v. State*, 892 S.W.2d 905, 907 (Tex.Crim.App. 1995).

As a general rule, the defendant, seeking to limit his criminal liability, is the party requesting a charge on the lesser offense pursuant to Article 37.09. *Ford v. State*, 38 S.W.3d 836, 840 (Tex.App.--Houston [14th Dist.] 2001, pet. ref'd). However, the State is equally entitled to seek a lesser-included offense instruction when it feels the proof has fallen short of proving the charged offense. *Ford*, 38 S.W.3d at 840, *citing Arevalo v. State*, 943 S.W.2d 887, 890 (Tex.Crim.App. 1997). Article 36.14 requires the trial judge to deliver to the jury "a written charge distinctly setting forth the law applicable to the case." *Delgado*, 235 S.W.3d at 247, *quoting* TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon 2007). In discharging this duty, the trial court is authorized, but not required, to *sua sponte* include a charge on a lesser offense. *See Delgado* 235 S.W.3d at 249 (stating that it does not inevitably follow from Article 36.14 that the trial court has a *sua sponte* duty to instruct the jury on all potential defensive issues, lesser-included offenses, or evidentiary issues). Thus, a trial court is not restricted to submitting lesser-included offenses only when the defendant has properly requested them. *Ford*, 38 S.W.3d at 840; *McQueen v. State*, 984 S.W.2d 712, 717 (Tex.App.--Texarkana 1998, no pet.). This is true even if the defendant objects to submission of the instruction. *Ford*, 38 S.W.3d at 840; *McQueen*, 984 S.W.2d at 717, *citing Humphries v. State*, 615 S.W.2d 737, 738 (Tex.Crim.App. [Panel Op.] 1981).

An instruction on a lesser-included offense is proper when: (1) the lesser-included offense is included within the proof necessary to establish the offense charged; and (2) there is some evidence in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.App. 1993); *Avila v. State*, 954 S.W.2d 830, 842 (Tex.App.--El Paso 1997, pet. ref'd). In addressing the first prong, we do not consider the evidence that was presented at trial. *Hall v. State*, 225 S.W.3d 524, 535-36 (Tex.Crim.App. 2007). We instead focus on the statutory elements of capital murder, as modified by the particular allegations in the indictment, and the elements of first-degree injury to a child. *Id.* Appellant was charged with capital murder for intentionally or knowingly causing the death of an individual under six years of age. *See* TEX.PENAL CODE ANN. § 19.03(a)(8)(Vernon Supp. 2008). A person commits the first-degree offense of injury to a child if he intentionally or knowingly causes serious bodily injury to a child who is fourteen years of age or younger. TEX.PENAL CODE ANN. § 22.04(a)(1), (c)(1). Appellant argues that injury to a child is not a lesser-included offense of capital murder because the age element in each offense is different. He maintains that injury to a child requires more proof than the greater offense because the State must prove that the child is fourteen years of age or younger whereas capital murder requires proof that the child is younger than six years of age. We do not view either of these elements as requiring more proof than the other. By proving that a child is younger than six years of age, the State would also prove that the child is younger than fourteen years of age. Thus, the age element of injury to a child is included within the proof of capital murder alleged under Section 19.03(a)(8). Injury to a child is, therefore, a lesser-included offense of capital murder.[1] *See Paz v. State*, 44 S.W.3d 98, 101

---

[1] In *Johnson v. State*, 234 S.W.3d 43, 54 (Tex.App.--El Paso 2007, no pet.), we stated that injury to a child is not a lesser-included offense of capital murder. In contrast to the instant case, *Johnson* involved injury to a child by omission. That offense is not a lesser included offense of capital murder because it has different elemental requirements.

(Tex.App.--Houston [14th Dist.] 2001, pet. dism'd, untimely filed). For this reason, Appellant's rights to due process and notice were satisfied. *See Jacob*, 892 S.W.2d at 907.

In addressing the second prong of *Rousseau*, we consider the evidence presented at trial. *Hall*, 225 S.W.3d at 536; *Jones v. State*, 921 S.W.2d 361, 364 (Tex.App.--Houston [1st Dist.] 1996, pet. ref'd). The evidence supports the submission of a lesser-included offense where there is more than a scintilla of evidence that either affirmatively refutes or negates an element of the greater offense, or the evidence on the issue is subject to two different interpretations, one of which negates or rebuts an element of the greater. *Schweinle v. State*, 915 S.W.2d 17, 19 (Tex.Crim.App. 1996); *Ramirez v. State*, 976 S.W.2d 219, 227 (Tex.App.--El Paso 1998, pet. ref'd). In determining whether the second prong has been met, it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted. *Hampton v. State*, 109 S.W.3d 437, 441 (Tex.Crim.App. 2003).

Appellant admitted striking Tangie on the head with his hand and other evidence showed that this resulted in serious bodily injury and ultimately death. Other evidence supported a conclusion that Appellant did not intend to cause the child's death. Immediately after striking Tangie, Appellant tried to help by giving her a treatment to ease her breathing and by clearing her airway of vomit. This constitutes more than a scintilla of evidence negating an element of the greater offense. The trial court did not err by *sua sponte* submitting the lesser-included offense to the jury. Issues One and Two are overruled.

### LEGAL SUFFICIENCY OF THE EVIDENCE

---

Capital murder requires no special relationship with the victim, while an injury to a child by omission requires the actor to have a legal or statutory duty to act or to have care, custody, or control of the victim. *See* TEX.PENAL CODE ANN. § 22.04(b)(1), (b)(2).

Appellant raises three issues challenging the legal sufficiency of the evidence to prove various issues in this case, and the statutory elements of first-degree injury to a child.

*Injury to a Child*

In Issues Three and Four, Appellant challenges the legal sufficiency of the evidence supporting the jury's finding that he intentionally or knowingly caused serious bodily injury by striking Tangie's head with his hand. The State counters that Appellant is estopped from raising a legal sufficiency challenge to the elements of injury to a child because he failed to object to the submission of this lesser-included offense. We agree. If a defendant does not object to the submission of a lesser-included offense and accepts the benefits of such a charge, he is estopped from challenging the legal or factual sufficiency of the evidence. *State v. Lee*, 818 S.W.2d 778, 781 (Tex.Crim.App. 1981)(murder defendant who requested instruction on voluntary manslaughter estopped from challenging sufficiency of evidence to prove sudden passion arising from adequate cause), *overruled on other grounds, Moore v. State*, 969 S.W.2d 4, 10 (Tex.Crim.App. 1998); *Otting v. State*, 8 S.W.3d 681, 686-87 (Tex.App.--Austin 1999, pet. ref'd untimely filed)(defendant tried for capital murder but convicted of lesser-included offense of injury to a child was estopped from contesting the legal and factual sufficiency of the evidence to sustain the conviction); *see Bradley v. State*, 688 S.W.2d 847, 853 (Tex.Crim.App. 1985)(defendant who vociferously objected to inclusion of lesser-included offense was permitted to raise challenge to sufficiency of evidence; court noted that failure to object to the charge on the ground that the evidence does not support submission of lesser-included offense would signal acquiescence on the part of the accused who would then be estopped from complaining on appeal that the evidence failed to establish all the elements of the lesser included offense), *overruled on other grounds, Moore v. State*, 969 S.W.2d 4, 10 (Tex.Crim.App. 1998). Issues Three and Four are overruled.

*Deadly Weapon Finding*

In Issue Five, Appellant challenges the legal evidence sufficiency of the evidence to prove that his hand was used as a deadly weapon. In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must review all the evidence, both State and defense, in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Lane v. State*, 151 S.W.3d 188, 191-92 (Tex.Crim.App. 2004). We do not resolve any conflict of fact or assign credibility to the witnesses, as it was the function of the trier of fact to do so. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991). Instead, our duty is only to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. *Adelman*, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson*, 819 S.W.2d at 843.

A deadly weapon is anything manifestly designed, made, or adapted for the purposes of inflicting serious bodily injury or anything that, in the manner of its use or intended use, is capable of causing death or serious bodily injury. TEX.PENAL CODE ANN. § 1.07(a)(17)(A), (B)(Vernon Supp. 2008). A fist or hand is not a deadly weapon *per se*, but it can become a deadly weapon in the manner used depending upon the evidence shown. *Lane v. State*, 151 S.W.3d 188, 191 (Tex.Crim.App. 2004); *Turner v. State*, 664 S.W.2d 86, 90 (Tex.Crim.App. 1983). Therefore, the hand could become a deadly weapon if in the manner of use, it is capable of causing death or serious bodily injury. *Lane*, 151 S.W.3d at 191; *Turner*, 664 S.W.2d at 90. Any injuries inflicted on the victim are factors to be considered in determining whether a hand or a foot was used as a deadly

weapon. *Lane*, 151 S.W.3d at 191; *Turner*, 664 S.W.2d at 90. To determine whether something is a deadly weapon, the jury may consider all the surrounding facts. *Blain v. State*, 647 S.W.2d 293, 294 (Tex.Crim.App. 1983).

It is undisputed that Tangie suffered brain injuries, more specifically, subdural and subarachnoid hemorrhage. Dr. Stern found two distinct impact sites and a contrecoup injury caused by the movement of the brain inside of the skull. Appellant admitted hitting Tangie hard on the head with his hand. Dr. Stern testified that Tangie's brain injuries, which caused her death, were caused by striking her head with an object or by her head striking an object. Dr. Stern, who is familiar with the legal definition of a deadly weapon, also informed the jury that a hand is a deadly weapon because it can cause death and serious bodily injury. She specifically noted that a hand can generate enough force to cause the type of brain injuries seen in Tangie. A hand can cause brain contusions and subdural hemorrhage by direct impact of the hand to the head or by knocking the individual down and causing a contrecoup injury. In the same manner, a hand can also generate enough motion of the brain inside of the skull to tear the small bridging veins and cause subarachnoid hemorrhage. The foregoing evidence is legally sufficient to support the deadly weapon finding. Issue Five is overruled. Having overruled each issue presented on appeal, we affirm the judgment of the trial court.

September 24, 2008

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.

(Do Not Publish)