Opinion issued June 8, 2006
     









In The
Court of Appeals
For The
First District of Texas




NO. 01-04-01070-CR
NO. 01-04-01072-CR




GREGORY LEE VILLANUEVA, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 21st District CourtBurleson County, Texas
Trial Court Cause No. 12742 (Counts I & II)



 
O P I N I O N
 
          On May 22, 2006, appellant filed a petition for discretionary review. Pursuant
to Texas Rule of Appellate Procedure 50, and within 30 days of the filing of said
petition, the Court withdraws its opinion and judgments issued March 30, 2006 and
issues this corrected opinion and judgments in their stead. See Tex. R. App. P. 50.Appellant, Gregory Lee Villanueva, appeals from jury convictions on two counts
of injury to a child.


 See Tex. Pen. Code Ann. § 22.04(a), (b) (Vernon 2003). The
jury assessed appellant’s punishment at 50 years in prison on each count, to be served
concurrently, and a $5,000 fine on each count. We determine (1) whether appellant’s
right against double jeopardy was violated because he was convicted on both counts
of injury to a child; (2) whether the omission of the definition of deadly weapon
constituted reversible error in regard to count I of the charge; (3) whether the evidence
was legally sufficient to support an affirmative finding that a deadly weapon was used
in the commission of the offense charged in count I and to show that appellant had a
duty to act in the offense charged in count II; and (4) whether there was a fatal variance
between the indictment and the proof. We affirm.
Background
          Appellant and his girlfriend, Amanda Dawn Legg, lived together and had a son,
G.V., on June 5, 2003. G.V. was a healthy baby. On July 29, 2003, while Legg was
bathing, she heard the bed frame squeaking “really loudly” in the bedroom where
appellant was alone with G.V. When she next saw G.V., the corner of his lips were
blue. She thought that he was cold and asked appellant to put socks on G.V. and to
wrap him in a blanket. Legg left the bedroom, at which time appellant was again alone
with G.V. for about 30 to 45 minutes. When Legg returned to the bedroom, she
discovered that G.V. was limp, had bruises on his inner-right ear and face, and was
making grunting noises. Legg told appellant that she wanted to take G.V. to the
hospital because “something wasn’t right,” but appellant refused, saying that “if [Legg
and appellant] took [G.V.] to the hospital that they would see the bruises and call in
[Child Protective Services (“CPS”)] and they would blame [Legg and appellant] for it.” 
While they were arguing, appellant took G.V. away from Legg. Legg ran down the
hallway to call for help, but appellant grabbed her by the arm and took her back to the
bedroom. 
          The next morning, G.V. was grunting and running a high fever. Legg called the
pediatrician, who instructed her to run a room-temperature bath to get G.V.’s
temperature down before taking him to the Brenham clinic. Dr. Donald Draehn
examined G.V. and observed that G.V. was experiencing periods during which he
would not breathe and was making some bicycling movements. G.V. was life-flighted
to the Children’s Hospital in Austin because of this life-threatening condition. Dr.
Keith Kerr, who was a pediatrician in the Intensive Care Unit (“ICU”) at the Children’s
Hospital, examined G.V. G.V.’s injuries included retinal hemorrhages,


 external
bruising around his face, intracranial bleeding, and multiple fractured ribs.


 G.V.’s
shear injury


 and the stroke that he suffered had been caused during the previous 24-hour time period. Dr. Kerr’s assessment was that G.V.’s injuries were caused by
shaken-baby syndrome. As a result of the injuries, G.V. had no brain activity and was
intubated because he could not breathe on his own. G.V. ultimately died as a result of
his injuries.
          Appellant was charged with two counts of injury to a child. The first count
charged him with intentionally or knowingly causing G.V.’s injury by shaking him with
his hands or striking him with an unknown object. The second count charged appellant
with injury to a child by omission in failing to seek medical treatment.  
   Double Jeopardy
          In point of error one, appellant argues that “[a]ppellant’s right to be free from
multiple punishment for the same offense was violated when the jury convicted him for
injury to a child in both Counts I & II of the indictment.”
          Appellant contends that because he was convicted of two offenses arising under
the same section of the penal code, against the same victim, on the same date, he should
not be subjected to multiple punishments for the same offense. Under section 22.04
of the Texas Penal Code, a person commits the offense of injury to a child if he
intentionally, knowingly, recklessly, or with criminal negligence, by an act, causes
serious bodily injury to a child. Tex. Pen. Code Ann. § 22.04(a). If the offense
involves an omission, rather than an act, however, a person commits an offense only
if he has a legal duty to act or if he assumed care, custody, or control of the child. Id.
§ 22.04(b). The Family Code provides that a parent has a duty of care, control, and
protection of his or her child and a duty to provide medical care to the child. See Tex.
Fam. Code Ann. § 151.001(a)(2), (3) (Vernon 2005). 
          Double jeopardy is the principle that a person shall not be “subject for the same
offense to be twice put in jeopardy of life or limb.” U.S. Const. amend. V. The Texas
Constitution provides similarly: “No person, for the same offense, shall be twice put
in jeopardy of life or liberty, nor shall a person be again put upon trial for the same
offense, after a verdict of not guilty in a court of competent jurisdiction.” Tex. Const.
art. I, § 14. These prohibitions protect against (1) a second prosecution for the same
offense after acquittal; (2) a second prosecution for the same offense after conviction;
and (3) multiple punishments for the same offense. Ex parte Kopecky, 821 S.W.2d
957, 958 (Tex. Crim. App. 1992). When a defendant is subjected to a single trial, only
the third aspect of the protection against multiple punishments is involved. Ex parte
Herron, 790 S.W.2d 623, 623–24 (Tex. Crim. App. 1990). 
          For double jeopardy purposes, “[t]he same offense means the identical criminal
act, not the same offense by name.” Luna v. State, 493 S.W.2d 854, 855 (Tex. Crim.
App. 1973) (holding that sales of heroin three months apart were not one offense); see
Ex parte Goodbread, 967 S.W.2d 859, 860-61 (Tex. Crim. App. 1998) (holding that
15 separate sexual offenses committed between June 10, 1990 and April 1, 1994 were
not one offense). In Luna, the Court of Criminal Appeals commented on the possibility
that, although two offenses could appear to be covered by a single charge, they could
still be two entirely separate offenses. See Luna, 493 S.W.2d at 855. In declaring that
“[t]he same offense means the identical criminal act, not the same offense by name,”
the Luna Court gave the following example: 
To illustrate, there might be two cases against A for assault
to murder on B with a pistol on the same alleged date, and a
judgment of conviction or acquittal occur in one case. On
the face of the pleadings and judgment a plea of former
conviction or acquittal would appear good, and yet A may
have tried to kill B on two different occasions on the same
day. 





Id. at 855 (citation omitted). The Court of Criminal Appeals held in Luna that, when
one cannot determine from the State’s pleadings whether the offenses prosecuted are
the same, the court must look to the proof offered at trial. Id.
          Here, appellant was charged with and convicted of two violations of Penal Code
section 22.04. Under count I, appellant was convicted of violating section 22.04(a) by
intentionally or knowingly causing serious bodily injury to a child by shaking or
striking him. Under count II, appellant was convicted of violating section 22.04(b) by
intentionally or knowingly by omission causing serious bodily injury to a child for
whom he had a legal duty to act. To prove count I, the State offered evidence that
G.V.’s injuries included external bruising around the face, retinal hemorrhaging,
damage around the nerve of the left eye, shear injury, and multiple fractured ribs. By
contrast, to prove count II, the State offered evidence that appellant, who was G.V.’s
father, had prevented Legg from taking G.V to the hospital when she realized that G.V.
needed medical attention. Appellant told Legg that, if they took G.V. to the hospital,
the staff would see G.V.’s bruises and call CPS. Legg attempted to call for help, but
appellant grabbed her and took her back to the bedroom. Accordingly, the record
contains evidence that appellant twice committed injury to a child: first, by shaking
G.V. with his hands or striking him with an unknown object, and then, by failing to
seek medical treatment for G.V. after he had inflicted those injuries upon him.
          Thus, appellant was convicted of two separate offenses of injury to a child. See
Vick v. State, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999) (holding that because
offenses at issue involved separate acts, it need not be determined whether those
offenses would be considered “same” under Blockburger


 test because precondition for
employing test—i.e. that two offenses involve same conduct—was absent). Because
appellant was convicted of two separate offenses, he was subject to a separate penalty
for each offense. See Watson v. State, 900 S.W.2d 60, 62 (Tex. Crim. App. 1995); see
also Vernon v. State, 841 S.W.2d 407, 410 (Tex. Crim. App. 1992) (holding that those
who commit multiple, discrete assaults against same victim are liable for separate
prosecutions and punishments for every instance of their criminal conduct). We hold
that appellant’s right against double jeopardy was not violated by being convicted on
both counts of injury to a child.
          We overrule appellant’s point of error one. 
 
Omission of Deadly Weapon Instruction
          In point of error two, appellant argues that the trial court erred because it
improperly instructed the jury on count I of the indictment. Specifically, appellant
argues that “the trial court committed reversible error when it failed to include the
statutory definition of deadly weapon in it’s [sic] charge to the jury in Count I of the
indictment and failed to properly place the burden of proof on the deadly weapon issue
upon the State.” Appellant further contends that because “the deadly weapon definition
was neither plead [sic] in the indictment, nor defined in the court’s charge, then any
affirmative finding in the judgment ran afoul of the express requirements of Tex. Code
Crim. Proc. art. 42.12 sec. 3g(a)2 . . . .” 
A.      Structural Error  
           Assuming, arguendo, that omission of “deadly weapon” was error, it was charge
error. See Hill v. State, 913 S.W.2d 581, 584–85 (Tex. Crim. App. 1996). Appellant
argues that “without a proper charge defining ‘deadly weapon’ and placing the burden
of proof on the State requiring the jury to find the use of a deadly weapon beyond a
reasonable doubt,” he was denied due process of law, which “created a structural error
immune from a harmless error analysis.” Appellant argues that the charge error
committed here is the same type of “structural error” found in Sullivan v. Louisiana,
in which the trial court gave a definition of “reasonable doubt” that had previously
been held unconstitutional. Sullivan v. Louisiana, 508 U.S. 275, 281, 113 S. Ct. 2078,
2082–83 (1993) (holding that harmless error analysis did not apply when a “beyond a
reasonable doubt” instructional error consisted of a misdescription of burden of proof). 
The jury-instruction error in this case is quite different from the jury-instruction error
of the type in Sullivan. Here, the court did not submit a constitutionally deficient
reasonable-doubt instruction, but, rather, the court omitted the definition of “deadly
weapon.” See id. The omission of the definition did not amount to a denial of the right
to a jury verdict of guilt beyond a reasonable doubt without which the criminal trial
could not reliably serve its function. See id. Accordingly, we decline to find that this
is structural error that is not subject to harm analysis. 
B.      Almanza Analysis
          Alternatively, appellant claims that the charge was erroneous and constituted
egregious harm under Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1984). 
Appellant did not object to the omission of the deadly-weapon definition in the charge. 
          Jury charge errors to which there is no objection are subject to review under the
standards established by Almanza, 686 S.W.2d at 160. Therefore, error, if any, does
not require reversal unless it was so egregious and created such harm that appellant was
denied a fair trial. Id. at 171. The actual degree of harm must be assayed in light of the
entire jury charge; the state of the evidence, including the contested issues and the
weight of probative evidence; the argument of counsel; and any other relevant
information revealed by the record of the trial as a whole. Id. Errors resulting in
egregious harm are those that affect the very basis of the case, deprive the defendant
of a valuable right, or vitally affect a defense theory. Hutch v. State, 922 S.W.2d 166,
171 (Tex. Crim. App. 1996). 
          1.       The Entire Jury Charge
          In this case, the application portion of the charge provided, in relevant part, as
follows: 
Now, bearing in mind the foregoing instructions, if you find
from the evidence beyond a reasonable doubt that on or
about July 29, 2003 in Burleson County, Texas, the
defendant, GREGORY LEE VILLANUEVA, did then and
there intentionally or knowingly cause serious bodily injury
to [G.V.], a child younger than 15 years of age, by shaking
the said [G.V.] with his hand or hands, a deadly weapon, or
by striking the said [G.V.], with and against an object, a
deadly weapon, the exact nature and description of which is
unknown to the Grand Jurors, or any combination thereof,
you will find the defendant guilty as charged in Count I of
the indictment.
 
If you do not so find, or if you have a reasonable doubt
thereof, you will find the defendant not guilty as to Count I
of the indictment.

 
 
 
Although the term “deadly weapon” is statutorily defined by Penal Code section 
1.07(a)(17),


 this definition was not included in the jury charge. Nevertheless, the
statutory definition is neither complex nor unusual, and the definition is much like the
common meaning of the word. See Tex. Pen. Code Ann. § 1.07(a)(17) (Vernon 2005). 
When the term “deadly weapon” is viewed in the factual context of the charge, the
statutory definition is apparent. For instance, the application paragraph states that
appellant caused “serious bodily injury to [G.V.], a child younger than 15 years of age,
by shaking the said [G.V.] with his hand or hands, a deadly weapon, or by striking the
said [G.V.], with and against an object, a deadly weapon . . . .” Therefore, the jury
found that appellant caused serious bodily injury to G.V. with his hands or an object,
which tracks the statutory definition of “deadly weapon.” No harm resulted from the
court’s failure to include the definition because the facts, as applied to the law in the
application paragraph, required the jury to apply the statutory definition. Cf. Hughes
v. State, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994) (holding that because facts, as
applied to law in application paragraph, pointed jury to appropriate portion of
definitions, no harm resulted from court’s failure to limit definitions of culpable mental
states to result and circumstances of conduct). Examining the court’s charge as a
whole, we find that the context in which the term “deadly weapon” was used, and its
relation to other words and terms used in the charge, adequately conveyed to the jury
the meaning of the term “deadly weapon” under the facts in this case. 
          2.       The State of the Evidence
          Additionally, the jury heard evidence that, on July 29, 2003, after appellant had
been alone with G.V, G.V.’s lips were blue, he was limp, he was making grunting
noises, and he had bruises on his inner-right ear and down the left and right side of his
face. When G.V. was taken to the Children’s Hospital the next day, a medical
examination and x-rays revealed that he also had retinal hemorrhaging, damage around
the nerve of the left eye, a shear injury, and multiple fractured ribs. G.V.’s shear injury
and the stroke that he had suffered had been caused during the previous 24-hour time
period. Dr. Rene Jankowski, who was an attending physician at the Children’s
Hospital, testified that G.V.’s retinal hemorrhaging was among the worst that she had
ever seen and that the injury was caused by some sort of shaking of G.V. G.V.’s shear
injury was associated with very rapid acceleration–deceleration injury, i.e. instead of
G.V.’s just being shaken forward and back, G.V. was banged against something that
stopped the movement acutely. Because there was no massive skull fracture or external
bruising on the back of G.V.’s head, Dr. Jankowski concluded that G.V.’s injury had
been caused by “[b]anging the head against a couch cushion, against a mattress pillow,
against a pillow or something like that.”


 Dr. Kerr’s assessment was that G.V.’s
injuries were caused by shaken-baby syndrome, and his opinion was that the baby had
been injured when appellant was alone in the bedroom with G.V., which was when
Legg had heard the bed shaking and squeaking loudly. Because the evidence was
sufficient to establish that appellant used his hands or an object to cause serious bodily
injury to G.V., the trial court’s failure to include the statutory definition did not result
in egregious harm. See Olveda v. State, 650 S.W.2d 408, 409 (Tex. Crim. App. 1983)
(holding that omission of statutory definition of “in the course of committing theft”
from charge not reversible error); White v. State, 844 S.W.2d 929, 933 (Tex.
App.—Houston [1st Dist.] 1992, pet. ref’d) (holding that defendant was not
egregiously harmed by omission of statutory definition of term “knowledge” from
charge because of strength of State’s evidence and because argument properly
presented issue of defendant’s knowledge to jury). 
 
 
          3.       The Arguments of Counsel
          Additionally, both parties’ closing arguments were consistent with the
proposition that the State had to prove that appellant caused serious bodily injury to
G.V. by shaking him with his hands or by striking him with an object, in order to obtain
a valid conviction. Appellant’s attorney argued in part: 
The State has the burden to prove beyond a reasonable doubt
that [appellant] committed this act. And, ladies and
gentlemen, it is offensive. What happened to this baby is
absolutely terrible. Nobody is denying that. Nobody is here
trying to say, well, maybe the baby was sick or maybe it was
something else. The evidence supports that this baby was
shaken and killed. There is no doubt. But the evidence does
not support that [appellant] is the person who did that.

The prosecutor’s closing argument included the following: 
This defendant is guilty of injury to a child by shaking this
child with his hands, slamming this child, a combination of
that however he exactly did it, he caused those injuries to
this child with his hands, these two deadly weapons that he
used on this child. And then he failed, knowing that, to take
that child for medical treatment. He’s guilty beyond a
reasonable doubt, in both counts of the indictment. 
          4.       Appellant’s Arguments
          Appellant contends that the omission of the definition of “deadly weapon”
caused him egregious harm because (1) the jury was not guided by the rule of law; (2) 
the State was relieved of its burden of proof; and (3) the language of the application 
 
paragraph in conjunction with the omission of the definition implicitly commented on
the weight of the evidence.
                    a.       Rule of Law 
          Appellant contends that the omission of a definition of “deadly weapon” in the
charge “deprived [him] of a valuable right to have the jury guided by the rule of law.” 
          Given the application paragraph and evidence presented, even without the
definition of “deadly weapon,” a reasonable juror could have concluded that appellant
had used either his hands or an object to cause serious bodily injury to G.V., which,
under section 1.07(17), made appellant’s “hands” or the “object” a deadly weapon. See
Tex. Pen. Code Ann. § 1.07(a)(17). Further, appellant has not shown that the
elements were in question, that the jury was confused about the definitions, or that he
would have benefitted from the definitions. See Mosley v. State, 686 S.W.2d 180, 182
(Tex. Crim. App. 1985) (finding that jury was not misled by omission of definition of
“bodily injury” because no issue was presented by evidence or arguments to suggest
either that bodily injury was in dispute or that there was confusion about what was
meant by term). Having reviewed the omitted statutory definition in light of the entire
charge and the evidence presented at trial, it is hard to imagine how the definition’s
inclusion would have changed the verdict. That omission has no relation to the fact
that the jury did not believe appellant’s theory of the case. 
                    b.       Burden of Proof
          Appellant argues that “without a statutory definition included in the charge, the
burden of proof on the deadly weapon issue was not placed squarely upon the State.” 
Appellant specifically contends that because the statutory definition was omitted, “the
jury had no way of knowing whether the State was alleging a subsection (A) deadly
weapon or a subsection (B) deadly weapon. . . . [I]f a subsection (A) deadly weapon
was alleged the State would be required to prove as such. Similarly, a subsection (B)
allegation would require the State to prove it.” 
          To obtain an affirmative deadly weapon finding, the State must prove beyond a
reasonable doubt that the defendant used or exhibited a deadly weapon during the
offense. Hill, 913 S.W.2d at 583. The Texas Court of Criminal Appeals has
recognized that a hand may be a deadly weapon within the meaning of section
1.07(a)(17), “depending upon the evidence shown.” Turner v. State, 664 S.W.2d 86,
90 (Tex. Crim. App. 1983). The State needed to prove only that appellant’s hands were
capable of causing serious bodily injury in the way that they were used or intended to
be used. See Hill, 913 S.W.2d at 584. 
          As described above, the evidence presented at trial was sufficient to establish
that appellant used his hands or an object to cause serious bodily injury to G.V. 
Because the indictment and charge here stated that appellant caused serious bodily
injury to G.V. with his hands or an object, the State obviously relied on subsection (B)
of section 1.07(a)(17), rather than subsection (A). In arguing that the burden of proof
was not placed upon the State, appellant disregards the language in the charge that
stated, “[I]f you find from the evidence beyond a reasonable doubt. . . .” When read in
context and in conjunction with the abstract portion, the charge clearly instructed the
jury to convict only if the jurors found beyond a reasonable doubt from the evidence
that appellant had caused serious bodily injury to G.V. by shaking G.V. with his hands
or by striking G.V. against an object. 
          It is clear from a review of the record as a whole that the jury was made aware
that the State had to prove, in order to obtain a valid conviction, that appellant caused
serious bodily injury to G.V. with his hands or an object.
          Accordingly, appellant has not demonstrated that the State’s burden of proof on
the affirmative finding as to a deadly weapon was affected by the omission of the
definition of deadly weapon. 
                    c.       Improper Comment on Weight of Evidence
          Appellant argues that the language in the application paragraph of count I, in
conjunction with the omission of the definition, implicitly commented on the weight
of the evidence because it presumed that appellant used or exhibited a deadly weapon. 
In support of his argument, appellant contends that “the deadly weapon instruction
submitted in the application paragraph was not neutral. As presented, it appeared
almost as a statement of fact rather than an allegation to be proved.” 
          A trial court, in preparing and submitting a jury charge, is prohibited from
expressing any opinion as to the weight of the evidence, from summing up the
testimony, from discussing the facts, or from using any argument in the charge
calculated to arouse the sympathy or to excite the passions of the jury. Tex. Code
Crim. Proc. Ann. art. 36.14 (Vernon 2005). A charge that constitutes a comment by
the court on the elements of the offense charged or assumes the truth of a controverted
issue is a comment on the weight of the evidence and is erroneous. Whaley v. State,
717 S.W.2d 26, 32 (Tex. Crim. App. 1986); Grady v. State, 634 S.W.2d 316, 317 (Tex.
Crim. App. 1982).  
          Although appellant does not cite to Andrews v. State, his contention that, by
placing “a deadly weapon” in apposition to “hands” and “object,” the jury was relieved
from having to find that hands or object was a deadly weapon appears, at first blush,
to find some support in that case. See id, 652 S.W.2d 370, 373–74 (Tex. Crim. App.
1983). In Andrews, the Court of Criminal Appeals held that the application paragraph
of that charge was erroneous because the application paragraph of the charge
eliminated from the State’s burden a key element of the offense. Id. In Andrews, 
 
however, the defendant timely and properly objected to the application portion of the
charge.


 In the instant case, no objection was made at trial. Id. at 373. 
          In Andrews, the Court of Criminal Appeals held that the application paragraph
of the charge eliminated from the State’s burden a key element of the offense that it had
to prove before a valid conviction could occur, that is, whether the magazine depicted
and described patently offensive representations of actual or simulated sexual
intercourse, anal intercourse, and oral sodomy. Id. at 374. The court further held that
the application paragraph was subject to the defendant’s objections and the trial court
erred in overruling these objection. Id.
          The charge in this case does not suffer from the same infirmity as the charge in
Andrews. Appellant did not object at trial to the application paragraph. Although the
application paragraph here listed alternative weapons, the issue did not inform the jury
that any weapon, deadly or otherwise, had in fact been used by appellant. The
application paragraph applied the statutory definition of deadly weapon to the facts in
the case. By contrast, in Andrews, the charge described the magazine as “patently
offensive,” rather than allowing the jury to determine whether or not the material was
obscene.
          By finding appellant guilty, the jury necessarily believed beyond a reasonable
doubt that appellant caused serious bodily injury to G.V. with his hand or an object. 
In the first sentence of the application paragraph, the jury was instructed, “[I]f you find
from the evidence beyond a reasonable doubt.” That phrase modifies every subsequent
phrase in the application paragraph. Reading the application paragraph as a whole,
each separate portion, including the complained-of phrase, incorporates the opening
phrase. Thus, the charge, reasonably construed, required the jury to find, beyond a
reasonable doubt, that appellant caused serious bodily injury to G.V. with his hand or
an object. See McElroy v. State, 528 S.W.2d 831, 834 (Tex. Crim. App. 1975). 
Consequently, the court’s use of the words “a deadly weapon,” unaccompanied by a
definition of that term, was not an assumption, nor was it a comment on an element of
the offense in the charge. See Collins v. State, 800 S.W.2d 267, 270 (Tex.
App.—Houston [14th Dist.] 1990, no pet.). 
          5.       Resolution
          Considering the charge as a whole, the state of the evidence, and the arguments
of counsel, we hold that appellant did not show that he suffered egregious harm. See
Almanza, 686 S.W.2d at 160.
          We overrule appellant’s point of error two.  
                                                     Legal Sufficiency
          In points of error three and five, appellant argues that the evidence is legally
insufficient to support an affirmative finding that a deadly weapon was used in the
commission of the offense charged in count I and to show that appellant had a duty to
act in the offense charged in count II. 
          In determining the legal sufficiency of the evidence, we review the evidence in
the light most favorable to the verdict to determine whether any rational fact finder
could have found the essential elements of the offense beyond a reasonable doubt.
Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Escamilla v. State,
143 S.W.3d 814, 817 (Tex. Crim. App. 2004). We may not re-weigh the evidence or
substitute our judgment for that of the fact finder. King v. State, 29 S.W.3d 556, 562
(Tex. Crim. App. 2000). This standard of review is the same for both direct-and
circumstantial-evidence cases. Fitts v. State, 982 S.W.2d 175, 185 (Tex.
App.—Houston [1st Dist.] 1998, pet. ref’d). If there is evidence that establishes guilt
beyond a reasonable doubt and the jury believes that evidence, the judgment must be
affirmed. Id.
A.      Count One
           In point of error three, appellant argues that “no rational trier of fact could have
found he used or exhibited a deadly weapon during the commission of the alleged
offense of Count I of the indictment.” Appellant seeks reformation of the judgment to
eliminate the affirmative finding of a deadly weapon.
          When the State alleges the use of a deadly weapon that is not deadly per se, like
the ones here, the State must prove beyond a reasonable doubt that the weapon was
used in a manner capable of causing death or serious bodily injury. Hill, 913 S.W.2d
at 584. Texas Penal Code Section 1.07(a)(17)(B) provides, in relevant part, that a
“deadly weapon” is “anything that in the manner of its use or intended use is capable
of causing death or serious bodily injury.” Id. § 1.07(a)(17)(B) (Vernon 2005). Texas
Penal Code Section 1.07(a)(46) provides that “ ‘serious bodily injury’ means bodily
injury that creates a substantial risk of death or that causes death, serious permanent
disfigurement, or protracted loss or impairment of the function of any bodily member
or organ.” Tex. Pen. Code Ann. § 1.07(a)(46) (Vernon 2005). 
          The Texas Court of Criminal Appeals has recognized that a hand may be a
deadly weapon within the meaning of section 1.07(a)(17), “depending upon the
evidence shown.” Turner, 664 S.W.2d at 90. To determine whether something is a
deadly weapon, the jury may consider all the surrounding facts, including the
defendant’s words. Blain v. State, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983). The
State needed to prove only that appellant’s hands were capable of causing serious
bodily injury in the way that they were used or intended to be used. See Hill, 913
S.W.2d at 584.
          Viewed in the light most favorable to the verdict, the evidence presented at trial
established that G.V.’s injuries were caused by violent shaking or very high-impact
force. In this case, G.V. suffered external bruising around his face, severe retinal
hemorrhaging, damage around the nerve of his left eye, a brain hemorrhage, and
multiple broken ribs. Dr. Kerr’s assessment was that G.V.’s injuries were caused by
shaken-baby syndrome. Because there was no massive skull fracture or external
bruising on the back of G.V.’s head, Dr. Jankowski concluded that G.V.’s injuries had
been caused by “[b]anging the head against a couch cushion, against a mattress pillow,
against a pillow or something like that.” In addition, the jury saw photographs of the
victim taken shortly after the incident, which showed bruising on G.V.’s cheek, chin,
right ear, and arms. As a result of the injuries inflicted by appellant, G.V. had no brain
activity and was intubated because he could not breathe on his own; G.V. ultimately
died as a result of his injuries.
          From this evidence, the jury could have rationally concluded that appellant’s
hands, in the manner used, were capable of inflicting serious bodily injury to G.V. See
Morales v. State, 792 S.W.2d 789, 790–91 (Tex. App.—Houston [1st Dist.] 1990, no
pet.) (holding evidence sufficient to support deadly-weapon finding when evidence
showed that defendant used his hands to suffocate victim). We hold that the evidence
was legally sufficient to show that appellant used a deadly weapon during the
commission of the offense alleged under count I of the indictment. 
We overrule appellant’s point of error three. 
B.      Count Two
          In point of error five, appellant argues that “the evidence did not show the
Appellant had a duty to act in light of the facts known to him at the time on the
omission.”
          Section 22.04(a) of the Penal Code provides, in relevant part, that a person
commits an offense if he intentionally or knowingly, by act or omission, causes bodily
injury to a child. Tex. Pen. Code Ann. § 22.04(a). An omission that causes serious
bodily injury is conduct constituting an offense if the actor has a legal or statutory duty
to act. Id. § 22.04(b). The Family Code provides that a parent has a duty to care for,
to control, to protect, and to provide medical care to a child. Tex. Fam. Code Ann. §
151.001(a)(2), (3).
          Viewed in the light most favorable to the verdict, the evidence presented at trial
established that appellant discussed G.V’s deteriorating medical condition with Legg
and decided not to take G.V. himself or to let her take G.V. to the hospital, for fear that
CPS would be called. Legg told appellant that she wanted to take G.V. to the hospital
because his lips were blue, he had bruises on his face, he was grunting, and his body
was limp. The testimony indicated that the child was in obvious, severe distress from
having suffered injuries; he was not acting normally. Legg attempted to call for help,
but appellant grabbed her by her arm, took her back to the bedroom, and would not let
her take G.V. to the hospital, but refused to act or to allows another to act. This
evidence shows that appellant was aware of G.V.’s dire medical condition and the need
to take him to the hospital. G.V.’s sickly appearance, limp body, and grunting all
provided ample evidence to support a guilty verdict on count II. Further, Dr. Draehn
stated that a layperson who was not a physician should have been “really concerned
and have great trepidation about [G.V.’s] health.” The evidence was sufficient for a
rational jury to find beyond a reasonable doubt that appellant intentionally or
knowingly caused serious bodily injury to G.V. through his failure to provide medical
care when he had a duty to provide that care.
          We overrule appellant’s point of error five. 
 
Fatal Variance
          In point of error four, appellant complains that “there was a fatal variance
between the indictment and proof since the state failed to prove the grand jury used due
diligence in attempting to ascertain the exact manner and means with [by] which
appellant caused serious bodily injury to the victim.”
          Appellant contends that “[t]he medical testimony at trial showed the exact
manner and means which caused the victim’s head trauma. Specifically, the evidence
showed the victim was injured by having been ‘shaken’ and having been ‘struck’ with
or against some object.” If the nature of the object can be arrived at only by
circumstantial evidence, then an “unknown object” averment may be employed. See
Simon v. State, 488 S.W.2d 439, 444 (Tex. Crim. App. 1972). If the evidence at trial
fails conclusively to show the object used to commit the alleged offense, there is a
prima facie showing that the object was unknown to the grand jury. Matson v. State,
819 S.W.2d 839, 847 (Tex. Crim. App. 1991). In such an instance, it is not necessary
to prove whether the grand jury used reasonable diligence to discover the identity of
the object. Matson, 819 S.W.2d at 847. A variance occurs if a discrepancy exists
between the allegation in the indictment and the proof presented at trial. Gollihar v.
State, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). In such cases, if the State has
proven the defendant guilty of a crime, but has proven the commission of the crime in
a manner that varies from the manner alleged in the indictment, a variance exists that
may render the evidence insufficient to sustain the conviction. Id. at 247. 
          The indictment in count I provided: 
The Grand Jurors . . . present in and to said Court, that
GREGORY LEE VILLANUEVA, on or about the 29th day
of July, A.D. 2003, and before the presentment of this
indictment in said County and State, did then and there
intentionally or knowingly cause serious bodily injury to
[G.V.], a child younger than 15 years of age, by shaking the
said [G.V.] with his hand or hands, a deadly weapon, and by
striking the said [G.V.] with and against an object, a deadly
weapon, the exact nature and description of which is
unknown to the Grand Jurors, and any combination thereof 
. . . .
          In this case, G.V.’s retinal and brain hemorrhaging were evidence of shaken-baby syndrome, specifically, his injuries had been caused by some type of impact force. 
The only evidence of the possible type of object used was Dr. Jankowski’s testimony
that G.V.’s brain injury could have been caused by “[b]anging the head against a couch
cushion, against a mattress pillow, against a pillow or something like that.” Legg and
Dr. Kerr also testified that they believed that G.V. had been injured when Legg heard
squeaking coming from the bedroom, where appellant was alone with G.V. From this
evidence, we are unable to conclude that the evidence at trial conclusively showed the
identify of the object against which G.V. was struck. At most, it showed that the object
could have been a soft surface, such as a cushion or a mattress. 
          Further, Dr. Elizabeth Peacock, deputy medical examiner for Travis County,
stated that there was no way to tell if G.V.’s impact injury had been caused by a soft
surface, as opposed to a hard surface. She also stated that G.V.’s death could have
been caused by either the impact injury or by the shaking injury. This evidence defeats
appellant’s argument that the proof conclusively showed how G.V. was injured. See
McFarland v. State, 845 S.W.2d 824, 830-31 (Tex. Crim. App. 1992), overruled on
other grounds, Bingham v. State, 915 S.W.2d 9 (Tex. Crim. App. 1994) (finding that
evidence referring to possible characteristics as being “knifelike” in nature was
insufficient to prove that weapon was knife). Nothing is developed at trial to suggest
that, through investigation, the grand jury could have ascertained the identity of the
object alleged to be unknown; there was, therefore, a prima facie showing that the
object’s identity was unknown to the grand jury, thereby supporting the allegation in
the indictment. See Matson, 819 S.W.2d at 847. Accordingly, we hold that, because
the evidence was inconclusive as to the instrumentality that appellant used to strike
G.V., which comports with the allegation in the indictment, the claim of a fatal variance
between the indictment and the proof fails. See Boyd v. State, 811 S.W.2d 105, 122-23
(Tex. Crim. App. 1991); McNiel v. State, 757 S.W.2d 129, 132 (Tex. App.—Houston
[1st Dist.] 1988, no pet.). 
We overrule appellant’s point of error four.
                                              Conclusion
          We affirm the judgment of the trial court.                                                                                                                                                                                              



                                                             Tim Taft
                                                             Justice

Panel consists of Justices Taft, Keyes, and Hanks.

Publish. See Tex. R. App. P. 47.2(b).