WALLACE BAILEY v. THE STATE.

No. 15586. Delivered March 22, 1933.
Reported in 58 S. W. (2d) 834.

The opinion states the case.

*B. W. Smith* and *W. A. Anderson,* both of San Angelo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is assault with intent to murder; the punishment, confinement in the penitentiary for two years.

Vince Holt was a traffic officer in the city of San Angelo.

Receiving a call from Bud Boyd, proprietor of a recreation club, he went to Boyd's place of business. Appellant and Buddy Norris were in the back end of the building. Norris was drunk and appeared to have received some bruises. Addressing the parties, the officer said: "What is going on here?" Appellant replied that he (appellant) would take care of Norris. The officer then said that he would take Norris in charge. At this juncture, Norris said: "Let me get my coat." Norris' coat was under a pool table. The officer reached down and picked it up in his left hand. There were two pints of whisky under the coat. Taking the coat in his right hand, the officer reached down and picked up both bottles of whisky with his left hand. As he raised up appellant struck him. The first blow rendered him unconscious. Immediately after appellant struck the officer, a pair of brass knucks fell on the floor and rolled under a pool table. After the officer had fallen to the floor in an unconscious condition, appellant jumped on him and continued to beat him. A witness for the state testified that while appellant was beating the officer he (the witness) struck appellant several times and finally knocked him off of the officer. Two or three bystanders then held appellant and prevented him from continuing his attack. The state's testimony was to the effect that, as appellant was pulled off of the officer, he said: "I hope that s— of a b— on the floor dies." Another witness testified that appellant addressed the officer as follows: "I hope you die you G— d— s— of a b—." Speaking to the witness who knocked him off of the officer, appellant said: "When I get out I am going to get you." Further, there was testimony from witnesses for the state that, in referring to the officer, appellant said: "It is just another d— 'law.'" When officers approached the scene of the assault, appellant fled. Holt, the injured party, was carried to the hospital, where he was placed on the operating table. It was discovered that he had a cut on his lip "through from the outside to the inside." This cut was an inch long. He had a cut behind his ear, which went through to the scalp and down to the bone. This cut was about two and one-half inches long, and was ragged. Both eyes were bruised and black. Part of the nose bones were broken. We quote from the testimony of the physician as follows: "As to the nose wound, we had to get on the inside and prize the bones apart and out to get them lined up. * * * From my experience I would consider the nose and head wounds rather serious wounds; I have had quite a lot of experience with wounds of that nature. From my experience I will state to the jury that

I do not think the wound on the head and wound on the lip could have been made by a bare fist. I treated Mr. Holt (the injured party) for quite a while—probably a couple of weeks in all before I discharged him. At the time I first saw Mr. Holt. he was what I would call semi-conscious—that means half way between. We would get him to do things. He could understand what we wanted but didn't seem to thoroughly understand."

The court submitted proper instructions covering assault with intent to murder and aggravated assault. Appellant insists that the conviction for assault with intent to murder can not be sustained, his position being that the proof on the part of the state shows no higher grade of offense than an aggravated assault. We think the jury were warranted in reaching the conclusion that appellant intended to kill the injured party, and that, when interrupted by bystanders, he was making fair progress toward the accomplishment of his desire to kill. His action in striking the injured party with brass knucks, his persistence in continuing the assault after his victim had already become unconscious, his specific declaration that he hoped the injured party would die, and his flight when officers approached, were all circumstances which it was within the province of the jury to weigh in determining whether there was an intent to kill. The wounds were serious. If it was possible that death might have been inflicted by the weapon appellant used, and he intended to take life, though the weapon was not a deadly weapon, still he might be guilty of an assault with intent to murder. Branch's Annotated Penal Code, sec. 1587; Franklin v. State, 37 Texas Crim. Rep., 113; Jackson v. State, 48 Texas Crim. Rep., 648; Basquez v. State, 26 S. W. (2d) 206; Ludie Rose v. State, opinion on motion for rehearing, this day delivered. It not being necessary to decide the question, we disclaim any intention of holding that brass knucks should be considered to be per se a deadly weapon.

Appellant contends that the state relied upon circumstantial evidence. We are unable to agree with this contention. The testimony was direct that appellant assaulted the injured party.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.