EUGENE "STUBBY" BEARROW v. THE STATE.

No. 19786. Delivered June 15, 1938.

120

The opinion states the case.

*Reynolds & Heare,* of Shamrock, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.——The offense is murder; the punishment, confinement in the State Penitentiary for a term of forty years.

The testimony adduced by the State, briefly stated, shows that on the afternoon of the 20th day of November, 1937, the appellant and six others, including a woman and her twelve year old son, met at a confectionery parlor in the town of Shamrock. From there they all went to a beer tavern where all except Davis, Nutall and the boy drank some beer. Then they left to go to a dance at Texola. Appellant procured a bottle of whisky and on the way it was passed around among the parties and all of them, with the exception of the driver and the boy, partook of it. After they had gone about ten miles, they stopped. The boy and his mother got out of the car. At this juncture, appellant accused the deceased of having bragged that he could whip him; this the deceased denied. Appellant then began to strike the deceased with his fist and the whisky bottle, knocking him down between the seats of the car. He then pulled him out of the car, struck him a few more blows, kicked and stomped him as he lay prostrate upon the ground and then dragged him to the side of the road where he left him either dead or in a

dying condition. From this point the party returned to Shamrock, drove up to a filling station and stopped, where appellant washed the blood of his victim from his hands, face and clothing. The next morning the deceased was found at the place where they had left him. His body was frozen stiff. He was taken to an undertaking establishment, where an examination of his body revealed three wounds on his head cut to the skull, and one wound over the right eye. The nose was crushed flat to the base, his face was badly discolored and his eyes, nose and mouth full of sand. The undertaker testified that after the body had thawed, blood came from both his ears and nose, indicating concussion of the brain.

Appellant did not testify or offer any testimony denying the act attributed to him by the boy companion. His only defense was insanity due to epilepsy.

The only grounds upon which he relies for a reversal are his exceptions to the court's charge and the question of the sufficiency of the testimony to sustain his conviction of murder with malice. Appellant's objections to the court's charge, when stripped of much of its unnecessary verbiage, amounts to this: (1) That the court in his charge failed to instruct the jury in a positive and affirmative manner on the law of temporary insanity produced by epilepsy; (2) That the court did not affirmatively apply the law of insanity to the facts, in that the charge did not connect the issue of insanity with the disease of epilepsy; (3) Because the court failed to instruct the jury with reference to the law of temporary insanity produced by the voluntary recent use of ardent spirits.

We will first dispose of these exceptions before discussing any of his other contentions. The court instructed the jury that no act done in a state of insanity can be punished as an offense, and that the burden of proving his insanity devolved upon the defendant. He further instructed them as follows: "Whether the insanity be general or partial, whether continuous or periodical, the degree of it must have been sufficiently great as to have controlled the will of the accused and to have taken from him the freedom of moral action, at the time of the commission of the act. Where reason ceases to have dominion over a mind proven to be diseased, it then reaches the degree of insanity where criminal responsibility ceases, and accountability to the law, for the purposes of punishment, no longer exists. Whether that degree of insanity existed at the time of the alleged offense is the important question on the issue for your consideration and decision, it being purely a question of fact to be determined by you from the testimony."

He further told the jury that it is an essential ingredient of murder that the person, to be guilty of that crime, must be of sound mind and discretion; that he must have capacity and reason sufficient to enable him to distinguish between right and wrong as to the particular act he is then doing. He further charged: "In case the jury finds from the evidence that the defendant committed the act with which he is charged but at the time of the commission of the act he was in a condition of mental insanity, as above defined, you will acquit the defendant and say by your verdict, 'Not Guilty.' "

We deem the court's charge a sufficient instruction on the law of insanity. The only theory advanced as a cause for the claimed temporary insanity was epilepsy; no other cause or combination of causes was alleged. To have gone further and grouped facts on said issue might have caused an instruction on the weight of the testimony.

We do not believe there was sufficient evidence to raise the issue of temporary insanity produced by the voluntary recent use of ardent spirits; consequently there was no necessity for a charge thereon. There was no testimony from any source that appellant had imbibed intoxicating liquor to the extent that he was temporarily insane. The only person present at the time of the unfortunate occurrence who testified at the trial was the twelve year old boy and he said he could not tell whether appellant was or was not drunk. See Menach v. State, 97 S. W. 503.

The court adequately applied the law of murder with and without malice to the facts in the case and in each instance stated that unless they found from the evidence beyond a reasonable doubt that the defendant at the time entertained the specific intent to kill the deceased to acquit him of murder and next consider whether he was guilty of aggravated assault.

It was not necessary, in order to show murder with malice, that appellant in the commission of the offense use a deadly weapon. One might be guilty of murder with malice who choked another to death with his hand if he entertained the intent to kill. Since the jury found him guilty of murder with malice, they must have found that he entertained the specific intent to kill. See Basquez v. State, 114 Texas Crim. Rep. 602, 26 S. W. (2d) 206; Rose v. State, 58 S. W. (2d) 526; Bailey v. State, 123 Texas Crim. Rep. 206, 58 S. W. (2d) 834.

The court also charged the jury, at the request of the appellant, that before they could convict him of murder, if they convicted him at all, they must believe from the evidence be-

yond a reasonable doubt that the death of the deceased was the result of blows inflicted by the defendant upon the deceased, and if they had a reasonable doubt to acquit him of murder.

We have carefully examined the court's charge in the light of the objections addressed thereto. When considered as a whole, as it must be, we think it a fair application of the law to the facts as made by the testimony, and believe it adequately protected appellant in his legal rights.

We think the evidence is sufficient to warrant and sustain the jury's conclusion of appellant's guilt. It is shown by the testimony that the woman in the party did not want to leave the deceased lying there, but appellant said he deserved it. This clearly showed ill-will and hatred.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.