Terry Neal TURNER, Appellant,

v.

The STATE of Texas, Appellee.

No. 68605.

Court of Criminal Appeals of Texas,
Panel No. 2.

Dec. 21, 1983.

Rehearing Denied Feb. 15, 1984.

Mark F. Holland, Dallas, for appellant.

Henry Wade, Dist. Atty., W.T. Westmoreland, Jr., and Norman Kinne, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Cathleen R. Riedel, Asst. State's Atty., Austin, for the State.

Before ONION, P.J., and W.C. DAVIS and TEAGUE, JJ.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for murder, where the punishment was assessed by the court at life imprisonment as a result of a plea bargain.

All of appellant's grounds of error relate in one way or another to the finding by the court set forth in the judgment that "a deadly weapon" was exhibited and used during the commission of the offense. Such finding made under the provisions of Article 42.12, §§ 3f(a)(2) and 15(b), V.A.C.C.P., has a definite impact upon appellant's eligibility for parole and the possible punishment to be served.

Appellant urges that due process was violated when the prosecution and trial judge violated the terms of the plea bargain, that he did not knowingly and voluntarily enter the plea bargain, that the court erred in conducting a bifurcated trial on a guilty plea before the court, that the court erred in permitting evidence regarding a deadly weapon where there was no allegation or notice in charging instrument that prosecu-

tion contended such weapon was used, that there was insufficient evidence to show that State's Exhibit No. 2 (a stick) was a deadly weapon and error was committed by the trial court in finding hands and fists were deadly weapons.

In order to properly appraise these contentions, a review of the record is necessary.

The felony murder information charged in pertinent part that appellant on or about August 17, 1980 did

"unlawfully then and there knowingly and intentionally cause the death of Tonna Maria Longan, an individual, hereinafter called deceased, by striking the deceased with his fist, by choking the deceased with his hands, and by kicking the deceased with his feet . . . ."

Appellant was also charged by indictment with an unrelated sexual abuse charge wherein two prior felony convictions were alleged for enhancement of punishment.

On January 14, 1981, the appellant entered guilty pleas to both offenses as a result of a plea bargain for a life sentence in each case. The guilty pleas commenced in a joint proceeding. The court admonished the appellant with relation to both cases. See Article 26.13, V.A.C.C.P.

In connection with the instant case, the trial court informed appellant that his plea, guilty or not guilty, etc., would not have any effect upon the appellant being "pardoned or paroled." The court then went over the written plea bargain agreement point by point and determined that appellant understood the punishment would be a life sentence, that his probation application would be denied, that the nature of the conviction would be for a felony, that the life sentence would run concurrently with the life sentence in the sexual abuse case, and that the instant sentence would "begin August 18, 1980," meaning that credit for about six months' of jail time would be given.[1] The court informed appellant he

would follow the outlined plea agreement which was "identical with respect to both cases."

Thereafter the court accepted the guilty pleas and the State offered evidence to support such pleas. In connection with the instant murder case the State offered a written agreement to stipulate and a stipulated written judicial confession reading:

"I judicially confess that on the 17th day of August 1980, in Dallas County, Texas, I did knowingly and intentionally cause the death of Tonna Marie Longan, an individual, by striking her with my fist, by choking her with my hands and by kicking her with my feet."

The appellant took the witness stand, but was not questioned about the facts of the cases except to agree that "confessions" introduced in both cases were true and correct. In response to his counsel's interrogation, appellant stated he understood what the judge had told him and that a life sentence would be imposed.

At the close of the proceedings, the trial court assessed life imprisonment in the sexual abuse case, the appellant agreed to accept sentence at that time and it was imposed. The court assessed life imprisonment in the murder case and announced a hearing two days hence to determine "about the deadly weapon."

On January 16, 1981, appellant's counsel objected to further proceedings since the appellant had already been found guilty with punishment assessed, and the unitary trial before the court completed, that the felony information had not alleged a deadly weapon, and he had not been put on notice so as to prepare a defense as to the use of a deadly weapon.

The prosecutor responded that appellant's counsel was aware the State intended to offer evidence as to a deadly weapon. Appellant's counsel countered he was aware of what the State intended, but they did not

---

1. The sentence usually begins on the day imposed. The plea bargain agreement and trial court obviously meant that appellant was to be given credit on his sentence from August 18, 1980. There is no proper procedure to "back date" a sentence, though that phrase is often used.

attempt to offer it at the proper time, that punishment had already been assessed and that there was no separate penalty stage involved. The court overruled the objection.

Dr. Vincent DiMaio, Medical Examiner, was present at the autopsy on the deceased on August 18, 1980, performed by Dr. Linda Norton. He stated the autopsy revealed a foot long tear in the vaginal area. There were three different hemorrhagical bloody tracks, indicating a foreign object was rammed up the vagina and through the wall into the abdominal cavity three times. The doctor stated the injuries were consistent with State's Exhibit No. 2, a tree branch or stick, being thrust into the vagina.[2] He described the injuries as serious bodily injuries that could have caused death. Dr. DiMaio testified that the injuries described, however, were not the cause of death. He was not asked and did not state the cause of death.

Sarah Williams, a forensic serologist, testified the blood from the deceased and the blood on State's Exhibit No. 2, shown to have been found near the deceased's body, were of the same blood type of which only three in a thousand people had.

Officer Bill Parker, who arrested the appellant, testified appellant gave two written extrajudicial confessions. A Jackson v. Denno or Article 38.22, V.A.C.C.P. hearing was conducted. The State then introduced only one statement from each confession. "I picked up a stick and stuck it in her ass about three times" and "I took the clothes off and picked up a stick, shoved up her ass and out two or three times."

At the close of the second stage of the proceedings, the court again assessed life imprisonment. It then made two separate findings, one that State's Exhibit No. 2 (a stick) was a deadly weapon by the manner and method of its use in the instant offense by the appellant. In a second written finding, the court found the appellant "used and exhibited deadly weapons, to wit: his hands and his fists, in the manner of their use, in the commission of the offense." The

finding was expressed based solely on the written judicial confession introduced. Such finding was expressed ordered included in the judgment while there was no express order as to the earlier finding concerning State's Exhibit No. 2.

■ The formal judgment contains the following:

"The court finds that defendant herein used or exhibited a deadly weapon during the commission of said offense." (Emphasis supplied.)

The finding in the judgment does not identify the singular deadly weapon to which reference is made.

V.T.C.A., Penal Code, § 1.07(11), provides:

"(11) 'Deadly weapon'; means:

"(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

"(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."

V.T.C.A., Penal Code, § 1.07(34), provides:

"(34) 'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

Article 42.12, § 3f(a)(2), provides:

"(a) The provision of Sections 3 and 3c (granting of probation) of this Article do not apply:

"(1) * * *

"(2) to a defendant when it is shown that the defendant used or exhibited a deadly weapon as defined in Section 1.07(a)(11), Penal Code, during the commission of a felony offense or during immediate flight therefrom. Upon affirmative finding that the defendant used or exhibited a deadly weapon during the commission of an offense or during im-

---

2. Dr. DiMaio testified the injuries were caused by some long, hard object.

mediate flight therefrom, the trial court shall enter the finding in the judgment of the court. Upon an affirmative finding that the deadly weapon the defendant used or exhibited was a firearm, the court shall enter the finding in its judgment."

Article 42.12, § 15(b), V.A.C.C.P., provides:

"(b) A prisoner under sentence of death is not eligible for parole. If a prisoner is serving a sentence for the offenses listed in Section 3f(a)(1) of this Article, or if the judgment contains an affirmative finding under Section 3f(a)(2) of this Article, he is not eligible for release on parole until his actual calendar time served, without consideration of good conduct time, equals one-third of the maximum sentence or 20 calendar years, whichever is less, but in no event shall he be eligible for release on parole in less than two calendar years. All other prisoners shall be eligible for release on parole when their calendar time served plus good conduct time equals one-third of the maximum sentence imposed or 20 years, whichever is less."

It now has to be determined if a fist and hands are deadly weapons under the law and the facts of the case.[3] A fist and hands are not firearms, etc., so as to come under V.T.C.A., Penal Code, § 1.07(11)(A), definition of "deadly weapon." The appellant would further argue the Legislature never intended a fist and hands to be "deadly weapons" as only inanimate things could qualify. The State counters that the fist and hands falls under the definitions in § 1.07(11)(B) of "*anything* that in the manner or intended use is capable of causing death or serious bodily injury." (Emphasis supplied.)

In *Mosley v. State*, 545 S.W.2d 144, 145 (Tex.Cr.App.1976), this court quoted from Branch's Ann.Tex.Penal Statutes, 3rd Ed., § 1.07(11), p. 27:

"It would appear that prior Texas law provided, as here, that an instrument may become a deadly weapon by the manner of its use or capability for use."

The *Mosley* opinion further stated:

"Our prior opinions on the meaning of 'deadly weapon' do and should have instructional significance under the new Penal Code. This approach is particularly appropriate in light of the fact that the Legislature has apparently codified our prior case law definition of the term."

In *Limuel v. State*, 568 S.W.2d 309, 311 (Tex.Cr.App.1978), it was stated:

"Under the former Penal Code there was no statutory definition of deadly weapon. *Mosley v. State*, 545 S.W.2d 144 (Tex.Cr.App.1976) (footnote # 3). The current Penal Code, as observed, does contain such a definition and broadens the above considerations to include 'or its intended use.' Further, it has been held that the wounds inflicted is also a factor that is considered in determining the character of the weapon. *Reed v. State*, 149 Tex.Cr.R. 208, 192 S.W.2d 890 (1946); *Williams v. State*, 477 S.W.2d 24 (Tex.Cr. App.1972). This does not, however, mean that wounds must be inflicted before a knife can be determined to be a deadly weapon. See and cf. *Richards v. State*, supra [147 Tex.Cr.R. 118, 178 S.W.2d 517]."[4]

In *Danzig v. State*, 546 S.W.2d 299 (Tex. Cr.App.1977), an aggravated assault with a deadly weapon case, the court wrote:

"We therefore hold that under the new Penal Code the wounds inflicted on the injured party are factors to be considered in determining whether a weapon is a deadly weapon."

In *Dominque v. State*, 598 S.W.2d 285 (Tex.Cr.App.1980), involving aggravated robbery cases, the court stated:

"In *Hubbard v. State*, 579 S.W.2d 930 (Tex.Cr.App.1979), we held that one must

---

3. The trial court failed to make a finding as to "feet" as alleged in the indictment and the written judicial confession.

4. In *Limuel* it was held that although a knife is not a deadly weapon per se, it can qualify as such through manner of its use, its size and shape and its capacity to produce death or serious bodily injury.

look to the weapon's use and intended use to determine if it is a deadly weapon. In *Denham v. State,* 574 S.W.2d 129 (Tex.Cr. App.1978), we held that the nature of the inflicted wounds is a factor to be considered but that wounds are not a necessary prerequisite for an object to be a deadly weapon. * * * The most important criteria was the manner in which the weapon was used."

Looking at some of the cases under former statutes of the 1925 Penal Code, we observe that in *Ohlrich v. State,* 162 Tex. Cr.R. 502, 287 S.W.2d 478 (1950), the court observed:

"Ordinarily use merely of hands, fist or other members of body will not constitute an aggravated assault. *Buchanan v. State,* Tex.Cr.App., 13 S.W. 1000."

The court found that Ohlrich had done such damage to the victim with hands and feet that the means used were calculated to inflict serious bodily injury and affirmed the conviction under the aggravated assault statute then in effect.

In *Bearrow v. State,* 135 Tex.Cr.R. 119, 118 S.W.2d 594 (1938), it was held that the use of a deadly weapon in the commission of a killing is not necessary to show murder with malice. There it was noted that a person choking another person to death with his hand may be guilty of murder if the person doing the choking entertains the intent to kill.

In *Ray v. State,* 160 Tex.Cr.R. 12, 266 S.W.2d 124 (1954), a murder case, the court held that hands and feet, which defendant, according to the indictment, used in killing the deceased, were not "deadly weapons" per se and they could become such only in the manner used.

Likewise in the instant case, and under the 1974 Penal Code, we conclude that a fist or hand are not "deadly weapons" per se but can become such only in the manner used depending upon the evidence shown.

In the instant case there was no medical evidence of the cause of death. The autopsy report was not introduced. There was no evidence as to what injuries or wounds were inflicted by the fist or by the hands. Death could have been caused by the feet which were not included in the court's finding. In fact most of the evidence courts normally look to in determining whether an instrument or object is a deadly weapon from the manner of its use or intended use is not in the record.[5]

We cannot conclude that the evidence supports the finding in the judgment, if it be in fact an affirmative finding, that a fist and hands were deadly weapons as used in the commission of the offense.

Next, we must determine if State's Exhibit No. 2 (a stick) was a deadly weapon under the law and facts of the case. If the stick was a deadly weapon, it would be under the terms of V.T.C.A., Penal Code, § 1.07(11)(B), from the manner of its use, etc.

The evidence as to the stick was presented only at the disputed second phase of the bench trial. The medical examiner testified the injuries to the vagina and abdominal wall were consistent with having been inflicted with an instrument such as State's Exhibit No. 2, that the injuries were serious, but not the cause of death. Appellant argues the injuries were inflicted after the death of the deceased.

The court made a separate written finding that the stick was a deadly weapon, but it did not, as in the finding as to the fist and hands, expressly order the finding as to the stick be incorporated in the formal judgment. The formal judgment made only a finding that "a" deadly weapon was used without identifying the weapon. We cannot conclude, under the circumstances of this case, that there was an *affirmative* finding in the formal judgment as to the stick so to meet the requirements of Article 42.12, § 15(b), V.A.C.C.P.

---

**5.** There was no testimony as to relative size of the parties, the size and condition of the hands or fist, etc., or the manner used, etc.

The judgment will be ordered reformed to remove any finding as to "a deadly weapon."

Our holding eliminates the necessity of any future discussion as to appellant's grounds of error as to the findings of "deadly weapons." With the reformation of the judgment, there is no merit to appellant's claim the plea bargain was violated, or that he did not voluntarily plead guilty. Likewise his claims as to lack of notice in the indictment as to use of a deadly weapon, and the impropriety of the bifurcation of the bench trial are rendered moot.

The judgment, as reformed by deleting from the formal judgment of the trial court in F–81–610–J the finding as to a deadly weapon, is affirmed.[6]

6. The clerk of the court is hereby directed to furnish a copy of this opinion to the Texas Department of Corrections and to the Texas Board of Pardons and Paroles.