# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-06-00685-CR

---

**Jose Ybarra, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
NO. D-1-DC-05-900779, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

A jury found appellant Jose Ybarra guilty of knowingly causing serious bodily injury to a child and assessed a punishment of fifty years in prison and a $10,000 fine. *See* Tex. Penal Code Ann. § 22.04 (West Supp. 2007). Appellant contends that the evidence is factually insufficient to sustain the guilty verdict. He also challenges the finding that he used a deadly weapon during the commission of the offense and urges that the trial court should have instructed the jury on the lesser included offense of reckless injury to a child. We will overrule these contentions and affirm the conviction.

On the morning of June 11, 2005, appellant was left in sole custody of his six-week-old daughter while his wife was at work and his mother was visiting relatives. When his mother returned home one-and-a-half hours later, appellant was standing on the porch holding his daughter, who was pale and appeared to be having a seizure. The child was taken to the hospital where she

was found to have a fractured skull and brain trauma. Her arm, leg, collar bone, and several ribs were also broken. She had retinal and pulmonary hemorrhages. The skull and brain injuries had been inflicted within hours of the child's arrival at the hospital, but not all of the injuries were fresh; there were some healing fractures. The pediatric intensive care physician who treated the child testified that it was one of the worst shaken baby cases she had ever seen: "She was shaken repeatedly and I suspect very hard from the sides, enough to break ribs and bruise her lungs. We know it wasn't the first time it happened because she had healing rib fractures. I suspect her head probably bumped against something soft, some other kind of blunt object. This is severe, extreme shaken baby." The treating pediatric ophthalmologist testified that the child had "probably the worst retinal hemorrhages I have seen of someone who lived." As a result of her injuries, the child is legally blind, suffers from seizures, and is unlikely to ever walk or talk.

Appellant concedes that the evidence, when viewed in the light most favorable to the verdict, is legally sufficient to sustain his conviction. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (legal sufficiency standard of review). In his first point of error, however, appellant argues that when all the evidence is viewed neutrally, the great weight and preponderance of the evidence shows that he did not knowingly injure his daughter. *See Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006) (factual sufficiency standard of review). Appellant argues that the greater weight of the evidence demonstrates that he recklessly inflicted the injuries.

Injury to a child is a "result of conduct" offense; that is, the actor's culpable mental state must relate to the injury resulting from his conduct rather than to the conduct itself or the circumstances of that conduct. *Alvarado v. State*, 704 S.W.2d 36, 38-39 (Tex. Crim. App. 1986)

2

(op. on reh'g). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. Tex. Penal Code Ann. § 6.03(b) (West 2003). A person acts recklessly with respect to a result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id*. § 6.03(c). The trial court authorized appellant's conviction if the jury found that he knowingly caused serious bodily injury to his child by shaking her with his hands or by causing her head to strike an unknown object. Although the court also instructed the jury on the lesser included offense of negligent serious bodily injury to a child, the charge did not include an instruction on the lesser included offense of reckless injury.[1]

Appellant was nineteen years old, and this was his first child. He had learning disabilities and most of his schooling had been in special education classes. Appellant's wife testified that he was a loving and attentive father and had always been eager to help with the baby. He was, however, inexperienced and uncomfortable caring for the child. She testified that he would sometimes call for her help even when she took a short shower. The morning in question was the first time he had cared for the child alone. Appellant's wife said that she had never seen him show anger toward the child, but appellant's mother acknowledged telling detectives that she thought appellant needed counseling for his anger.

Appellant gave several explanations for the child's injuries. He first said that the child was injured when a cat had jumped on her. On another occasion, appellant said that the injuries must have happened when he propped the child up for a photograph and she fell backward.

---

[1] This is the subject of appellant's second point of error.

Later, in a conversation with his mother and in videotaped statements to the police, appellant said that the baby had fallen from the couch. This was also the explanation appellant offered in his trial testimony. He testified that he had placed his daughter on the couch to change her diaper after she awoke from a nap. While he was throwing away the soiled diaper, he heard a loud sound from the living room. He found the child lying on the floor, where her head had struck a metal air conditioning grate. Appellant testified that the baby was unresponsive, so he shook her to awaken her. Appellant said that he shook the infant more or less continuously for ten to fifteen minutes, until his mother returned home. Appellant said, "I was shaking her and shaking her and shaking her, looking at her and crying and hugging her a little bit and going back shaking her and shaking her and shaking her." He testified that he would not have shaken the child in this manner if he had known it would harm her. He said that he had been scared; that he had "snapped" and "blanked out."

Appellant admitted that he had consistently denied shaking the child in his interviews with the police. During one of the videotaped statements, appellant told the detective: "I know I used, like I said, I used to get frustrated with her, nervous and stuff like that, but coming into my mind like that, shaking the baby, no. Cause I knew, I know, whenever you shake the baby, something bad was gonna happen. That something bad could happen when you shake the baby, or throw her, just like that. And me, my own blood, doing that to my own baby, no."

Although there is evidence from which the jury could have concluded that appellant was a well-meaning, albeit inexperienced and inept, father who did not knowingly injure his daughter, there is also a significant amount of evidence that appellant understood that his shaking of the baby was reasonably likely to result in serious bodily injury. In his statement to the officer

4

quoted above, appellant acknowledged knowing that "something bad could happen when you shake the baby." Moreover, the very enormity of the injuries argues in favor of a finding that appellant acted knowingly. As one of the doctors testified, the infant had been "[squeezed] very, very hard and [rocked] back and forth repeatedly. Nothing you would do in play, nothing you would do to wake a baby up, a horrendous anger force." It was not manifestly unjust for the jury to agree with the doctor's opinion that "a reasonable person would know" that such actions would cause serious bodily injury. Giving the verdict the deference it is due, we conclude that the jury's conclusion that appellant knowingly injured his daughter was not against the great weight and preponderance of the evidence. Point of error one is overruled.

In his second point of error, appellant contends that he was egregiously harmed by the trial court's jury charge because it did not include an instruction on the lesser included offense of reckless serious bodily injury to a child. As appellant admits, however, he did not ask for such an instruction or object to its omission. As a general rule, a defensive issue is not applicable to the case—and thus its omission from the jury charge is not error—unless the defendant timely requests the issue or objects to its omission. *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998); *see also Huizar v. State*, 12 S.W.3d 479, 483 (Tex. Crim. App. 2000). Even before *Posey*, the court of criminal appeals had held that a defendant who fails to request a lesser included offense instruction may not complain of its absence on appeal. *Thomas v. State*, 701 S.W.2d 653, 656 (Tex. Crim. App. 1985). Other courts of appeals have reached the same conclusion. *See Garza v. State*, 974 S.W.2d 251, 257 (Tex. App.—San Antonio 1998, pet. ref'd); *Hammond v. State*, 942 S.W.2d 703, 709 (Tex. App.—Houston [14th Dist.] 1997, no pet.). It is even possible that appellant's failure to

5

request an instruction on reckless injury to a child was a considered trial strategy. *See Ex parte White*, 160 S.W.3d 46, 55 (Tex. Crim. App. 2004); *Collier v. State*, 999 S.W.2d 779, 782 (Tex. Crim. App. 1999). For all of these reasons, point of error two was not preserved for appeal and is overruled.

Appellant's third and fourth points of error are related. In response to a special issue, the jury found that appellant used a hand as a deadly weapon during the commission of the offense, and the trial court's judgment reflects this affirmative finding. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 2007). In point of error three, appellant contends that the evidence does not support this finding because section 3g(a)(2) "is a general statute that cannot apply absent proof of an additional fact beyond the conduct" necessary for conviction. In point of error four, appellant contends that the evidence does not support the affirmative finding because the application of section 3g(a)(2) under the circumstances of this case produces an absurd result that the legislature could not have intended. In other words, appellant argues that he did not use his hands as a deadly weapon under a proper construction of section 3g(a)(2).

Appellant did not object to the submission of the special issue or otherwise advance these arguments in the trial court. Thus, nothing was preserved for appeal. *See* Tex. R. App. P. 33.1. His arguments fail in any case.

Appellant asserts that section 22.04(a)(1) and article 42.12, section 3g(a)(2) are in pari materia, that is, they concern the same subject or have the same object or purpose. *See In re J.M.R.*, 149 S.W.3d 289 (Tex. App.—Austin 2004, no pet.). Statutes that are in pari materia must be construed together and, if possible, conflicts between the statutes should be harmonized. *Id*. If there

is an irreconcilable conflict, the specific statute controls over the more general statute. *Id*. Appellant argues that sections 22.04(a)(1) and 3g(a)(2) irreconcilably conflict when, as in this case, the actor uses nothing but his bare hands to inflict a serious bodily injury to a child. He contends that in such a case, section 22.04(a)(1) must control and a section 3g(a)(2) affirmative finding cannot be added to the judgment. To hold otherwise, argues appellant, would mean that every serious injury to a child case would automatically qualify for a deadly weapon finding, which is a result appellant believes the legislature could not have intended.

Contrary to appellant's argument, section 22.04(a)(1) and section 3g(a)(2) are not in pari materia. The statutes are not found in the same legislative act. The statutes have different objectives: the former is designed to protect children from serious bodily injury while the latter is designed to deter the use of a deadly weapon in the commission of any felony offense. The statues do not require the same proof: section 22.04(a)(1) requires proof that the child suffered a serious bodily injury, but the defendant need not cause or even intend to cause serious bodily injury in order to justify a deadly weapon finding pursuant to section 3g(a)(2). *See Johnston v. State*, 150 S.W.3d 630, 638 (Tex. App.—Austin 2004, no pet.). The statutes do not have different penalties: an affirmative finding pursuant to section 3g(a)(2) does not alter the punishment range applicable to an offense under section 22.04(a)(1). *See Martinez v. State*, 883 S.W.2d 771, 774 (Tex. App.—Fort Worth 1994, pet. ref'd).[2]

---

[2] Under the applicable statutes as they read at the time of the offense, the affirmative finding in the judgment will delay appellant's eligibility for parole, but it will have no effect on his eligibility for mandatory supervision. *See* Act of May 8, 2007, 75th Leg., R.S., ch. 165, § 12.01, 1997 Tex. Gen. Laws 327, 425 (amended 2007) (current version at Tex. Gov't Code Ann. § 508.145(d) (West Supp. 2007)) (parole); Tex. Gov't Code Ann. § 508.149(a)(9) (West Supp. 2007) (mandatory supervision).

A deadly weapon includes anything that in the manner of its use or intended use is capable of causing serious bodily injury or death. Tex. Penal Code Ann. § 1.07(a)(17)(B) (West Supp. 2007). Under this definition, a person's hand can be a deadly weapon if it is used in the requisite manner. *Turner v. State*, 664 S.W.2d 86, 90 (Tex. Crim. App. 1984). Moreover, the application of article 42.12, section 3g(a)(2) is not limited to offenses that do not otherwise require the use of a deadly weapon. *Tyra v. State*, 897 S.W.2d 796, 798 (Tex. Crim. App. 1995). Thus, when appellant used his hands to inflict what were unquestionably serious bodily injuries to his infant daughter, he used his hands as a deadly weapon. An affirmative finding to that effect was appropriate even though it might have been impossible under the circumstances for appellant to have caused serious bodily injury to the child without using his hands as a deadly weapon. Points of error three and four are overruled.

The judgment of conviction is affirmed.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed

Filed: June 18, 2008

Do Not Publish

8