

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-16-00009-CR

Darryn **BURGESS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2014CR0646
Honorable Lori I. Valenzuela, Judge Presiding

Opinion by:　Rebeca C. Martinez, Justice

Sitting:　　Karen Angelini, Justice
　　　　　Marialyn Barnard, Justice
　　　　　Rebeca C. Martinez, Justice

Delivered and Filed:　December 7, 2016

AFFIRMED AS MODIFIED

Darryn Burgess appeals his conviction for Assault Upon a Public Servant, with an affirmative deadly weapon finding. TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1) (West Supp. 2016). We affirm the trial court's judgment.

### FACTUAL BACKGROUND

On the morning of November 10, 2013, Burgess sought treatment at Christus Alon Health Emergency Room in San Antonio for an apparent snake or spider bite on his right arm. Upon his arrival, he was treated by a triage nurse who quickly realized there were no observable signs of

injury. The nurse, who believed Burgess was hallucinating due to his paranoia and other irrational behavior, reported her findings to the attending physician. The attending physician, Dr. Portillo, learned that Burgess had recently used methamphetamine and marijuana. Dr. Portillo concluded that Burgess was suffering from some form of psychosis and directed the nursing staff to initiate an emergency detention.

San Antonio Police Officer Roberto Aguilar was called to the scene to detain and transport Burgess to a psychological facility for further evaluation. Officer Aguilar arrived, introduced himself to Burgess, and spoke with him for about 15-20 minutes. Burgess insisted he had been poisoned by a syringe or spiders, and his demeanor vacillated between calm and agitated. Meanwhile, Officer Yvette Meade arrived as backup. When Officer Aguilar informed Burgess that he was being detained for medical reasons and attempted to handcuff him, Burgess became agitated and began to physically resist. Burgess's mother had arrived and requested to take Burgess to the hospital herself. Upon the officers' refusal, she grabbed Officer Meade's arm and tried to prevent the officers from handcuffing her son. Officer Meade told Burgess's mother several times to move away and eventually pushed her back. When Officer Meade touched Burgess's mother, Burgess became irate, leading to a further escalation of the situation.

With the officers still trying to place the handcuffs on him, Burgess, the larger man, began pushing and wrestling to get away. Burgess pushed Officer Aguilar off of him, and raised his hands up in a fighting stance. Officer Aguilar used his Taser on Burgess in an attempt to subdue him, but it only further infuriated him. After ripping the Taser probes off his chest, Burgess attacked both officers. Burgess punched Officer Aguilar in his left eye, causing a flow of blood and knocking him to the ground. Burgess then turned and punched Officer Meade twice in her face, causing her to lose consciousness and fall to the floor. Officer Aguilar saw Officer Meade

fall and immediately attempted to rise to his feet, but Burgess punched Aguilar in the face again with such force that Aguilar saw white lights.

The struggle between Burgess and Officer Aguilar continued for some time in Burgess's favor, with Burgess landing multiple punches to Aguilar's head while Aguilar tried to defend himself and punch back. However, because of the bleeding above Officer Aguilar's left eye, his vision was blurry. At one point, both men fell to the ground, with Officer Aguilar landing on his back and Burgess landing on top of him and continuing to punch Aguilar in the face. With his left arm pinned down by the weight of Burgess's body, Officer Aguilar drew his handgun with his right hand and fired at Burgess, but missed. Burgess immediately pinned Officer Aguilar's hand holding the gun against the wall and attempted to pry the gun out of the officer's hand. Upon hearing the gunshot, Officer Meade, who had recently regained consciousness, noticed Officer Aguilar struggling on the floor with Burgess. Officer Meade was able to get up and make her way over to the two men. Officer Aguilar was yelling at Officer Meade that Burgess was trying to take away his gun and instructed her to shoot Burgess. Officer Aguilar testified that, at that moment, he believed he would probably lose his life. Officer Meade, whose own vision was blurry from a concussion, straddled Burgess's back and shot him at close range, ending the struggle. Officer Aguilar, who was bleeding from his face as well as from a gunshot wound to his lower leg, was taken to the hospital and treated for his injuries.

Burgess was indicted on three counts arising out of his struggle with Officer Aguilar: Aggravated Assault of a Public Servant, which caused the officer's firearm to discharge and strike him (Count I); Assault of a Public Servant, by striking the officer with his hands (Count II); and Taking or Attempting to Take a Weapon (i.e., firearm) from a Peace Officer (Count III). At the conclusion of his trial, the jury acquitted Burgess on Counts I and III involving the firearm, but found him guilty on Count II involving assault committed with his hands. The jury also made an

affirmative finding that Burgess used a deadly weapon, to wit: his hands, in the commission of the assault. Because Burgess pled true to two prior felony convictions, the punishment range was enhanced to confinement for 25-99 years or life. The trial court sentenced Burgess to 50 years' imprisonment and imposed a $2,000 fine.

## ANALYSIS

### *Sufficiency of the Evidence – Deadly Weapon Finding*

On appeal, Burgess raises a single issue, arguing the evidence is insufficient to support the jury's affirmative finding that he used his hands as a deadly weapon during the commission of the assault against Officer Aguilar.

In reviewing the legal sufficiency of the evidence to support a deadly weapon finding, we consider all of the evidence in the light most favorable to the finding and determine whether, based on the evidence and any reasonable inferences, a rational jury could have found beyond a reasonable doubt that the weapon alleged in the indictment was capable of causing death or serious bodily injury in the manner of its use or intended use. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Lane v. State*, 151 S.W.3d 188, 191 (Tex. Crim. App. 2004). We presume the jury resolved any conflicts in the evidence in favor of its verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

As pled in Count II of the indictment and submitted to the jury, the relevant elements of Assault upon a Public Servant are that a person (1) intentionally, knowingly, or recklessly causes bodily injury to another, (2) that the person knows is a public servant, (3) while the public servant is lawfully discharging an official duty. TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1) (West Supp. 2016); *Id.* § 1.07(a)(8) (West Supp. 2016) ("bodily injury" includes physical pain and any impairment of physical condition). Burgess does not challenge the sufficiency of the evidence to support the jury's findings on these elements. Indeed, the evidence is undisputed that Burgess

intentionally and repeatedly struck Officer Aguilar in the face, causing cuts and bleeding, while the officer was in uniform and lawfully discharging his official duty by attempting to detain Burgess.

Burgess does challenge the jury's deadly weapon finding, arguing the evidence was legally insufficient to establish that his hands were used as deadly weapons during the assault on Officer Aguilar.[1] A "deadly weapon" is defined as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id*. § 1.07(a)(17)(B) (West Supp. 2016). "'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id*. § 1.07(a)(46) (West Supp. 2016). Burgess contends the trial evidence did not show that Officer Aguilar suffered serious life-threatening injuries, as required to support a finding of "serious bodily injury" and use of a deadly weapon.

A weapon can be deadly by its design or by its use. *See Id*. §1.07(a)(17)(A), (B) (West Supp. 2016); *see also Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008). It is well established that a defendant's hands may, depending on the manner of their use, constitute a deadly weapon. *Turner v. State*, 664 S.W.2d 86, 89-90 (Tex. Crim. App. [Panel Op.] 1983). To warrant a deadly weapon finding based on a defendant's use of his hands, the State must prove that the defendant's hands, in the manner of their use, were *capable* of causing either death or serious bodily injury. TEX. PENAL CODE ANN. §1.07(a)(17)(B) (West Supp. 2016) (emphasis added); *Tucker*, 274 S.W.3d at 691. The use of the word "capable" in section 1.07(a)(17)(B) means the statute covers "conduct that threatens deadly force," even if the actor has no intention of actually using deadly force and does not actually use deadly force. *McCain v. State*, 22 S.W.3d 497, 503

---

[1] The indictment alleged that Burgess caused bodily injury to Officer Aguilar by striking him with Burgess's hands.

(Tex. Crim. App. 2000). Therefore, while the victim's injuries are a factor to be considered, the State need not prove that the defendant actually intended to cause serious bodily injury or death, or that his hands actually caused serious bodily injury or death. *Hopper v. State*, 483 S.W.3d 235, 239 (Tex. App.—Fort Worth 2016, pet. ref'd) (citing *Tucker*, 274 S.W.3d at 691); *see Turner*, 664 S.W.2d at 90 (victim's injuries are a factor in determining whether defendant's hands were deadly weapon). Finally, a jury may consider whether the victim feared death at the time when determining whether a deadly weapon was used in the commission of an assaultive offense. *Quincy v. State*, 304 S.W.3d 489, 499-500 (Tex. App.—Amarillo 2009, no pet.).

The evidence shows that, until Officer Meade intervened, Burgess was overpowering Officer Aguilar. Officer Aguilar stated that Burgess first punched him in the left eye, drawing a stream of blood, and then continued to repeatedly punch him in the face and head so many times that he lost count. Officer Aguilar testified that Burgess was physically larger than him and that his fist was "massive." Burgess knocked Officer Aguilar down to the ground at least twice. When Officer Aguilar attempted to get back up after the first time, Burgess punched him in the face with such force that Officer Aguilar stated he "saw white lights." The officer testified that, at that point, he realized he was going to have to "fight for [his] life." Officer Aguilar testified that when he fell the second time, Burgess landed on top of him and continued punching him in the face, while Aguilar's left arm was pinned down underneath Burgess's body. Officer Aguilar testified that, without Officer Meade's intervention in shooting Burgess, he believed that he would have died on the floor due to the beating he took at Burgess's hands.

As a result of the blows to the head by Burgess, Officer Aguilar sustained lacerations above his left eye and below his right eye which required six to seven stiches to close, as well as significant swelling in both eyes, and a fractured nose. Dr. Kimberly Molina testified that, in her experience, an individual can be killed by blows to the head with fists. Dr. Molina further testified

that, given the circumstances surrounding Officer Aguilar's inability to defend himself, the punches to the head, if continued, could have led to serious bodily injury or death.

Based on the close physical proximity between Burgess and Officer Aguilar during the struggle, the physical force and repetitive nature of Burgess's punches, the use of Aguilar's head as the target for the punches, the officer's vulnerable position down on the ground, and the testimony by Officer Aguilar that he feared he would lose his life, we conclude that Burgess's hands, in the manner of their use, were capable of causing death or serious bodily injury to Officer Aguilar. *See Hopper*, 483 S.W.3d at 239 ("[a]s long as the totality of the evidence showed that [the defendant's] hands were capable of causing serious bodily injury or death in the manner [the defendant] used them, the jury was authorized to find that [the defendant's] hand qualified as a deadly weapon."). Therefore, viewing all the evidence in the light most favorable to the jury's finding, we hold the evidence is sufficient to support the deadly weapon finding and we overrule Burgess's sole issue on appeal.

### *Correction of Judgment*

As the State points out, the judgment incorrectly states that Burgess was convicted of "Aggravated Assault Against a Public Servant (Habitual)." The jury acquitted Burgess of that offense, which was charged in Count I of the indictment. Instead, the jury convicted Burgess of "Assault Upon a Public Servant," as charged in Count II of the indictment, and also made an affirmative deadly weapon finding. Accordingly, the trial court's judgment is modified to reflect that Burgess was convicted of "Assault of Upon Public Servant (Habitual)" with an affirmative finding of a deadly weapon. *See* TEX. R. APP. P. 43.2(b); *see also Barrera v. State*, 321 S.W.3d 137, 156 (Tex. App.—San Antonio 2010, pet. ref'd).

## CONCLUSION

Based on the foregoing reasons, we overrule Burgess's sole issue on appeal. Because the judgment misstates the offense of conviction, we modify the judgment to reflect that Burgess was convicted of Count II, "Assault Upon a Public Servant (Habitual)," with an affirmative deadly weapon finding. The trial court's judgment is affirmed as modified.

Rebeca C. Martinez, Justice

DO NOT PUBLISH