

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-15-00180-CR

WILLIAM COLLINS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2013-400,381, Honorable William R. Eichman II, Presiding

April 26, 2017

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant William Collins appeals from his conviction by jury for the offense of aggravated assault in retaliation[1] and the resulting sentence of ninety-nine years of imprisonment.[2] Through two issues, appellant complains the evidence was insufficient to support his conviction. We will affirm.

---

[1] TEX. PENAL CODE ANN. § 22.02(b)(2)(C) (West 2016).

[2] The indictment also included two enhancement paragraphs setting forth appellant's previous final felony convictions for burglary of a habitation and robbery.

Background

The State's indictment alleged that appellant "intentionally, knowingly, or recklessly caused bodily injury to OLDA LEWIS by striking OLDA LEWIS with the defendant's hands or feet, and the defendant did then and there use or exhibit a deadly weapon, to-wit: the defendant's foot, during the commission of said assault, and the defendant was then and there acting in retaliation against or on account of the service by OLDA LEWIS as a witness . . .".

Testimony at trial showed Juan Bazaldua was putting his groceries away in his home when an assailant attacked him. The assailant used Bazaldua's cane to hit him in the back and waist. He then took Bazaldua's money and ran away. Bazaldua testified he did not know his assailant, had not seen his attacker prior to the assault and knew only that the attacker was wearing a red shirt with matching red pants. A poor-quality video introduced at trial showed a person wearing all red running away from the area of the apartment.

After the assault, Bazaldua left his apartment for help. His neighbor, Olda Dean Lewis, saw Bazaldua. Through broken English and by writing on a pad in red, Bazaldua told Lewis his attacker was wearing red clothes. Lewis had spoken with appellant earlier in the day. He recalled appellant "that morning had on some red." Lewis called 911, stating "ok, he said the dude had red. I know who he is . . . . He had all red on. Red top, red bottom." Based on his observations, Lewis then told the dispatcher the assailant was a black male and he knew who he was. "They call him Honey." Police

---

Appellant pled "true" to each of the enhancement allegations. TEX. PENAL CODE ANN. §§ 12.32; 12.42 (West 2016).

located one file in the name database with the moniker "Honey." That file belonged to appellant, also called "Honey Nut."

Police investigated appellant. Nine days after the robbery, appellant called the police department. The investigating officer contacted appellant and spoke with him over the telephone. Appellant admitted he had been in the area at the time of the robbery, and said he ran when he saw the assailant running. Appellant also said that on the day of the robbery, he was wearing a blue and red baseball shirt with turquoise and yellow shorts. Appellant also told the officer he had known Bazaldua since childhood and that Bazaldua would verify appellant did not attack him. The next day, appellant went to the police station and was interviewed further. He told police he saw a man called "Honey Pie" running from Bazaldua's apartment and he was wearing a "red Dickey suit."

That same day, appellant assaulted Lewis. Poor-quality video showed appellant struck Lewis and Lewis fell to the ground. Appellant struck Lewis two or three times with his feet. Appellant told police he hit Lewis once with his open hand and that he kicked him in the face. Lewis was taken to the hospital, where he remained for five days.

Analysis

The offense of aggravated assault required the State to prove appellant intentionally or knowingly caused bodily injury to Lewis and used or exhibited a deadly weapon, a foot, during the commission of the assault. TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2016). To prove appellant was guilty of the first degree offense, the State was required to prove appellant assaulted Lewis "in retaliation against or on

3

account of the service of another as a witness, prospective witness, informant, or person who has reported the occurrence of a crime." TEX. PENAL CODE ANN. § 22.02(b)(2)(C).

Standard of Review

In reviewing issues of sufficiency, an appellate court views the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inference therefrom, a rational jury could have found each element of the offense beyond a reasonable doubt. *Brooks v. State,* 323 S.W.3d 893, 902 (Tex. Crim. App. 2010) (plurality op.); *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex. Crim. App. 2003) (*citing Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). *See also Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007) (juries are permitted to draw multiple reasonable inferences from the evidence but they are not permitted to draw conclusions based on speculation). If, given all of the evidence, a rational jury would necessarily entertain a reasonable doubt of the defendant's guilt, due process requires that we reverse and order a judgment of acquittal. *Swearingen,* 101 S.W.3d at 95 (*citing Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex. Crim. App. 1992)). We measure the sufficiency of the evidence against the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

Sufficiency of Evidence to Prove Retaliation

Appellant first contends on appeal that the evidence was insufficient to show he knew Lewis reported him to police as Bazaldua's robber. We disagree.

4

The evidence showed Lewis called 911 to report the Bazaldua's robbery. Lewis identified a man he knew as "Honey" as the robber. Lewis relayed the same information to the responding police officer and to a detective during an interview two days later. Police used the nickname to identify appellant. During the in-person interview ten days after the robbery, the detective told appellant the witnesses he interviewed believed appellant committed the robbery. The detective also asked appellant if he knew Lewis.

The assault leading to this case occurred later on the day of the in-person interview. Lewis testified that he heard, while taking out his trash, a male voice say either "you won't say nothing else" or "you won't do that again." Lewis testified he later woke up in the hospital but did not remember the assault. During a third interview with police that took place three weeks after the assault, appellant admitted he assaulted Lewis but attributed his action to problems between the two men relating to a woman. Appellant's statement was presented to the jury at trial, along with the surveillance video showing appellant knocked Lewis down and kicked him.

The jury rationally could have seen that it was no coincidence appellant attacked Lewis after police interviewed him about the robbery. From Lewis's testimony, the jury was made aware that Lewis and appellant had spoken earlier on the day of the robbery. Police mentioned Lewis's name during their interview of appellant. And the jury rationally could have seen appellant's own remark just before his assault of Lewis to connect his action with Lewis's interactions with police. Contrary to appellant's argument, we find the evidence permitted the jury rationally to conclude appellant knew Lewis had identified him as the likely robber and that appellant assaulted Lewis as a result. And, the jury could have believed Lewis's testimony that he and appellant did

not fight over a woman and disbelieved appellant's explanation of his assault. Viewed under the appropriate standard, the evidence is sufficient to support the element of retaliation.

Sufficiency of Evidence to Prove Appellant's Foot was a Deadly Weapon

Appellant also contends on appeal the State failed to prove appellant's foot constituted a deadly weapon. We disagree with this contention as well.

An object is a deadly weapon when it is actually used in a manner which causes, or has the potential to cause death or serious bodily injury. *Hill v. State,* 913 S.W.2d 581, 591 (Tex. Crim. App. 1996) (citing TEX. PENAL CODE ANN. § 1.07(a)(17)). Serious bodily injury is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46). "For there to be protracted impairment such that a finding of serious bodily injury is proper, an organ or bodily member must lose some function." *Burks v. State,* No. 05-13-00852-CR, 2014 Tex. App. LEXIS 11369, at *8 (Tex. App.—Dallas October 14, 2014, no pet.) (mem. op., not designated for publication) (citation omitted). The loss of function "need only be protracted, not permanent." *Id.* (citations omitted). A bodily member has been defined as "[a] part or organ of the body; especially a limb or other separate part." *Lenzy v. State,* 689 S.W.2d 305, 310 (Tex. App.—Amarillo 1985, no pet.) (finding definition includes teeth).

In this case, the State was required to show beyond a reasonable doubt that appellant's foot, in the manner of its use, was capable of causing death or serious bodily injury. The State was not required to show Lewis actually suffered serious bodily injury;

6

instead, the State had to prove only that, in the manner of its use, appellant's foot was *capable* of causing death or serious bodily injury to Lewis. *McCain v. State,* 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). The Court of Criminal Appeals has recognized that "a hand or a foot may be a deadly weapon within the meaning of § 1.07(a)(17) 'depending upon the evidence shown.'" *Lane v. State,* 151 S.W.3d 188, 191 (Tex. Crim. App. 2004) (*citing Turner v. State,* 664 S.W.2d 86, 90 (Tex. Crim. App. 1983)).

Lewis's injuries are factors the jury was to consider in making its determination whether appellant's foot, in the manner of its use, was capable of causing serious bodily injury. *Hemphill v. State,* No. 08-03-00054-CR, 2004 Tex. App. LEXIS 3028, at *12 (Tex. App.—El Paso Apr. 1, 2004, pet. ref'd) (mem. op., not designated for publication) (citations omitted).

The jury had before it the testimony of witnesses as well as Lewis's medical records from his admission to the hospital. The evidence showed appellant knocked Lewis to the ground and kicked him three times, twice near his head. Witnesses saw Lewis in a "pool of blood" after the assault. Lewis lost consciousness and awoke at the hospital. He sustained a "2-cm laceration" on the back of the head that required staples to close. He also suffered injuries to his mouth. The records refer to his "right maxillary bone swelling," a "complete loss of dentures," and two loose incisor teeth "with blood inside the oral cavity."

From the injuries, the jury rationally could have inferred appellant's foot, in the manner of its use, was capable of causing a protracted loss or impairment of at least one bodily member or organ. *See Tucker v. State,* 274 S.W.3d 688, 691-92 (Tex. Crim. App. 2008) (injuries sustained by victim indicated weapon that caused her wound was

7

capable, in its manner of use, of causing serious bodily injury). *See also McCoy v. State,* No. 11-13-00099-CR, 2015 Tex. App. LEXIS 3781, at *4-5 (Tex. App.—Eastland April 16, 2015, no pet.) (mem. op., not designated for publication), citing *Lenzy,* 689 S.W.2d at 310 (injuries to teeth as serious bodily injuries). *See also Burks,* 2014 Tex. App. LEXIS 11369, at *9-10 (collecting cases addressing injuries to parts of body).

We note also Lewis spent five days in the hospital, some of it in the surgical intensive care unit, and required physical therapy. He used a walker for approximately a month after his release from the hospital. He still had a limp at the time of trial and his balance had deteriorated. He also suffered cognitive impairment and confusion that worsened over time.

We conclude the evidence in the record and the rational inferences to be drawn from it supports a conclusion appellant's foot, as used against Lewis, was capable of causing him serious bodily injury. Considering all of the evidence in the requisite light, it is sufficient to support appellant's conviction.[3] We affirm the judgment of the trial court.


James T. Campbell
Justice

Do not publish.

---

[3] Appellant also makes an argument that the State's evidence was insufficient to prove his identity as Bazaldua's robber. Proof of that fact was not an element of the hypothetically correct jury charge for the offense of aggravated assault of Lewis. *Malik,* 953 S.W.2d at 240. For that reason, we need not further consider that aspect of appellant's argument.

8